BARTEAU, Judge.
 

 Nicholas and Daniel Pyle (“Pyles”) appeal the grant of summary judgment in favor of their former employer, National Wine
 
 &
 
 Spirits Corp. (“National”) for additional wages pursuant to Ind.Code 22-2-9-1
 
 et seq.
 
 as well as the denial of their motion for partial summary judgment. Pyles argue that a bonus paid by National to its employees after Pyles had been terminated for cause constituted wages to which they are entitled. The trial court granted summary judgment in favor of National, finding 1) Pyles had failed to meet the prerequisites for bringing a private civil action under I.C. 22-2-9-1 and 2) even if the prerequisites have been met, Pyles were not entitled to the bonus.
 

 We affirm.
 

 FACTS
 

 National is a distributor/wholesaler of liquor, wine and other bottled products. Pyles were employed as drivers/deliverers by National until they were both terminated from their positions on January 6, 1989. National paid them all their earned wages, including vacation pay and pay for personal days to the date of their termination. However, when National paid its employees a bonus in 1989 based on its profitability in 1988, it did not
 
 *1295
 
 give Pyles a bonus even though they had been employed for all of 1988.
 

 National implemented its discretionary bonus program in 1986. The bonus was given in appreciation for the moderate success enjoyed by National in 1985. The amount each employee received was based on a percentage of the employee’s total earnings based on straight-time and over-time pay. Only employees in the active employ of National, or on medical leave, as of December 31, 1985, received a bonus. The employees were informed of the bonus by a letter from National’s president which stated that “there is no guarantee that bonuses will become an annual event.”
 

 National paid its employees another bonus in 1987. Again, the bonus was based on a percentage of the employee’s total earnings in the previous year. Only employees who were in National’s full-time employ or on approved medical leave as of March 10,1987, were eligible for the bonus. A letter explaining the bonus emphasized that there was no guarantee that the bonuses would become an annual event. National did, however, pay another bonus in 1988. The terms of the bonus were basically the same as the bonuses given in the previous years, except the eligibility date was March 31, 1988, and the amount of the bonus was based only on the employee’s straight-time pay in 1987.
 

 In 1988, National decided to give its employees a wage increase. Some National employees favored a small increase in addition to retention of the annual discretionary bonus. Some employees favored dropping the bonus in favor of a larger wage increase. Sometime after June 24, 1988, National polled the employees to determine which of the following options a majority of the employees preferred:
 

 A. The present system of discretionary bonuses based upon company performance with no wage increase;
 

 B. A raise of 25 cents per hour plus continuation of a discretionary bonus system; or
 

 C. Elimination of the bonus system in favor of a wage increase of 90 cents an hour.
 

 (R. 14). The results of the poll are not in the record, nor is there any evidence that National implemented a wage increase as outlined in any of the options. National did pay a bonus in 1989. Only full-time National employees as of March 17, 1989, along with those on approved medical leave and those who had retired since December 31, 1988, were eligible for the bonus. The amount each employee received was based upon the employee’s 1988 earnings. Pyles did not receive a bonus from National in 1989 as they were terminated on January 6 of that year.
 

 DISCUSSION
 

 When reviewing a summary judgment motion, this court stands in the shoes of the trial court.
 
 Department of Rev. v. Caylor-Nickel Clinic
 
 (1992), Ind., 587 N.E.2d 1311. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C);
 
 Associates Corp. of North America v. Smithley
 
 (1993), Ind.App., 621 N.E.2d 1116. We will affirm the grant of summary judgment if it is sustainable on any theory or basis found in the record.
 
 Stephenson v. Ledbetter
 
 (1992), Ind., 596 N.E.2d 1369. When the trial court states its reason for granting or denying summary judgment, this court is not bound by the trial court’s rationale.
 
 Caylor-Nickel Clinic,
 
 587 N.E.2d 1311.
 

 Pursuant to I.C. 22-2-9-1, an employer is required to pay an employee who has been separated from the payroll unpaid wages or compensation to which the employee is entitled. National paid Pyles all their earned wages, including pay for unused vacation, sick and personal days. However, Pyles argue that they are also entitled to their shares of the bonus National paid its employees in 1989. They argue that the “bonus” constitutes 1988 wages under I.C. 22-2-9-1 and Indiana caselaw.
 

 “Wages” are defined by I.C. 22-2-9-1 as “all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount.” The court in
 
 Gurnik v. Lee
 
 (1992), Ind.App.,
 
 *1296
 
 587 N.E.2d 706, cited by Pyles in support of their argument, examined whether a compensation nominated a “bonus” constituted wages under I.C. 22-2-9-1
 
 et seq.
 
 In
 
 Gur-nik,
 
 the employment agreement between Dickinson and The Travel Trade provided for an annual salary of $30,000, payable in weekly installments, and a minimum annual bonus of $5,200, or a percentage of the net profits for the year. The amount of the bonus was to be pro rated if Dickinson was not employed at the end of the year, and the minimum bonus was not conditioned on whether the company was profitable. The court held the trial court erred when it determined that the bonus was not “wages.” The court reasoned that the minimum bonus of $5,200 was part of Dickinson’s regular compensation because it related to the amount of time Dickinson worked (as it was pro rated if she was not employed by Travel Trade for the entire year) and it was paid on a regular, periodic basis. Further, the minimum bonus was not linked to the success of the company.
 

 The facts of
 
 Gumik
 
 are distinguishable from the facts presented here in several respects. Here, there is no indication that the bonus is linked to the time worked, or the amount of work done, by each employee. Instead, the bonus is linked to the success of the company. Further, employees were informed each year that there was no guarantee that the bonus would become an annual event but that the bonus was discretionary.
 

 National cites
 
 Jeurissen v. Amisub, Inc.
 
 (1990), Ind.App., 554 N.E.2d 12,
 
 trans. denied,
 
 in support of its argument that the bonus is not part of the employee’s compensation and therefore not a wage. In
 
 Jeuris-sen,
 
 the court held that an employee incentive bonus plan, which was linked to the financial success of the company, could not be considered wages for the purpose of I.C. 22-2-9-2. The
 
 Jeurissen
 
 court adopted a definition of “wages” used by the court in
 
 Wilson v. Montgomery Ward, Inc.
 
 (N.D.Ind. 1985) 610 F.Supp. 1035 at 1038:
 

 ‘... something akin to the wages paid on a regular periodic basis for the regular work done by the employee — the paycheck which compensates for the work done in the previous two weeks.’
 

 Jeurissen,
 
 554 N.E.2d at 13. Thus, the bonus was not a wage because it was linked to the financial success of the company and not to the amount of work done by the employee.
 

 What can be gleaned from the holdings in
 
 Gumik
 
 and
 
 Jeurissen
 
 is that a “bonus” is a wage if it is compensation for time worked and is not linked to a contingency such as the financial success of the company. In the case before us, the bonus, though based on the employee’s earnings, was not linked to the amount of work done by the employee. Like the bonus in
 
 Jeurissen,
 
 the bonus here was linked to the financial success of National. Therefore, we agree with National that its bonus is not a wage.
 

 Pyles attempt to bring the bonus paid by National within the facts of
 
 Gumik
 
 by arguing that the bonus became a part of the regular compensation in 1988 when the company polled its employees as to what pay structure the employees preferred. Pyles argue that the employees chose to receive a 25 cents per hour increase in addition to retention of the bonus system; therefore, the bonus is part of the regular compensation for National employees.
 

 This argument is faulty for two reasons. First, it assumes that a majority of National employees voted for, and National implemented, option (B) which called for a 25 cents wage increase and retention of the discretionary bonus. Pyles have failed to substantiate this assumption with any evidence. The only indication in the record that National gave its employees a wage increase in 1988 was Nicholas Pyle’s testimony that he received a 25 cents raise in 1988. There is no evidence in the record that National agreed to pay its employees an annual bonus as part of its compensation package. In fact, when National polled its employees in 1988, it did not agree to be bound by the vote of the employees. It is undisputed that the reason National conducted the poll was merely to determine employee sentiment regarding a higher wage increase versus retention of the discretionary bonus system implemented in 1986. Pyles presented no evidence from which it could be inferred that National implemented the option chosen by the employees.
 

 
 *1297
 
 Second, it is clear that the bonus system used by National was purely discretionary on the part of National. A letter which explained each year’s bonus clearly stated that the bonus was discretionary and that there was no guarantee that the bonuses would become an annual event. Assuming National did in fact implement a wage increase as outlined in option B of the 1988 poll, the increase called for a 25 cents raise increase “plus continuation of a
 
 discretionary
 
 bonus system.” Pyles’s arguments clearly ignore the discretionary aspect of the bonus system.
 

 Summary judgment in favor of National is hereby affirmed.
 
 [1]
 

 RUCKER and MILLER, JJ., concur.
 

 [1]
 

 . Because we may sustain the grant of summary judgment on any basis found in the record, we need not address the question of whether Pyles fulfilled the requirements of I.C. 22-2-9-4. This section provides in part:
 

 (a) It shall be the duty of the commissioner of labor to enforce and to insure compliance with the provisions of this chapter, to investigate any violations of any of the provisions of this chapter, and to institute or cause to be instituted actions for penalties and forfeitures provided under this chapter. The commissioner of labor may hold hearings to satisfy himself as to the justice of any claim, and he shall cooperate with any employee in the enforcement of any claim against his employer in any case whenever, in his opinion, the claim is just and valid,
 

 (b) The commissioner of labor may refer claims for wages under this chapter to the attorney general, and the attorney general may initiate civil actions on behalf of the claimant or may refer the claim to any attorney admitted to the practice of law in Indiana....
 

 The trial court held that because the commissioner did not refer the claims to the attorney general and the attorney general did not refer Pyles’s claims to their attorney, Pyles had not complied with the statute.