Michael WANK, Appellant–Plaintiff,

v.

SAINT FRANCIS COLLEGE,
Appellee–Defendant.

No. 02A03–0003–CV–087.

Court of Appeals of Indiana.

Dec. 15, 2000.

George Sistevaris, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, Indiana, Attorneys for Appellant.

Thomas N. O'Malley, Dawn R. Westfield, Barnes & Thornburg, Fort Wayne, Indiana, Attorneys for Appellee.

**OPINION**

BROOK, Judge

### Case Summary

Appellant-plaintiff Michael Wank ("Wank") appeals the trial court's entry of partial summary judgment in favor of appellee-defendant Saint Francis College ("St. Francis"), and the trial court's denial of his cross-motion for partial summary judgment. We affirm.

### Issue

Wank raises one issue for our review, which we restate as whether the trial court properly concluded that Wank's severance pay was not a wage under the Indiana Wage Payment Statute.

### Facts and Procedural History

Wank began working for St. Francis in September 1993 as the dean of enrollment services. Wank served in that position for three years. In October 1996, Wank's title was changed to vice president for enrollment management. In the summer of 1998, St. Francis merged with the Lutheran School of Nursing. As a result of the merger, St. Francis had to reorganize and eliminate some positions. Wank was terminated as a result of the merger on June 5, 1998. That same day, Sister Elise Kriss ("Kriss"), president of St. Francis, sent Wank a letter outlining a severance package approved by St. Francis for Wank. The package provided accrued vacation pay; continuation of current salary through June 30, 1998; effective July 1, 1998, and continuing through August 7, 1998, a salary increase of three percent as well as a prorated years-of-service bonus based on fifty dollars for each year of service; and severance pay based on thirty days plus one week of salary for each year of service. St. Francis offered the severance pay to Wank in acknowledgment of his years of service with the college. Neither the terms of Wank's employment with St. Francis nor a written policy provided for the payment of severance benefits.

Prior to the merger, no exiting employees had received severance pay.

On June 10, 1998, Kriss notified Wank that he was required to execute a release agreement. Pursuant to the agreement, Wank would receive the severance pay as consideration for signing the release. Wank had not been informed at the time of termination that he would be required to sign a release to receive the severance benefits. Wank refused to execute the release, and consequently, the severance package offered by St. Francis was not paid. On June 12, 1998, Wank's attorney sent a letter to Kriss requesting immediate reinstatement of Wank to his position or, in the alternative, demanding that St. Francis pay all of Wank's outstanding wages including the severance pay outlined in the June 5, 1998 letter. On June 19, 1998, Kriss sent a paycheck and vacation pay to Wank and also informed him that she would not proceed with the severance pay until she received the signed and notarized release form. However, Wank refused to sign the release.

On January 26, 1999, Wank filed a complaint against St. Francis alleging breach of employment contract, promissory estoppel, and a claim for unpaid wages under the Indiana Wage Payment Statute. Wank asserted that a letter he had received from Kriss and dated October 23, 1996, constituted a three-year employment contract with St. Francis. The letter did not contain any provision for severance benefits. On September 26, 1999, St. Francis moved for summary judgment on Wank's complaint. Wank responded and filed a cross-motion for partial summary judgment on his claim for unpaid wages. On January 10, 2000, the trial court held a hearing. At the close of the hearing, the trial court granted St. Francis's motion for summary judgment on Wank's breach of contract claim upon concluding as a matter of law that there was no contract between St. Francis and Wank. The trial court denied St. Francis's motion for summary judgment on the issue of promissory estoppel, concluding that genuine issues of material fact existed. The court took the cross-motions for summary judgment on the wage claim under advisement. On February 9, 2000, the trial court concluded that the severance pay at issue was not a wage under the statute and granted summary judgment in favor of St. Francis and denied Wank's cross-motion for summary judgment. Pursuant to Indiana Trial Rule 54(B), the court entered final judgment. This appeal now ensues.

## Discussion and Decision

### *Standard of Review*

■ Our summary judgment standard of review is well settled. Upon review of the grant or denial of a motion for summary judgment, we apply the same legal standard as the trial court. *Erie Ins. Co. v. American Painting Co.*, 678 N.E.2d 844, 845 (Ind.Ct.App.1997). Summary judgment shall be granted if the designated evidence shows that there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sizemore v. Arnold*, 647 N.E.2d 697, 698–99 (Ind.Ct.App.1995). Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). We will resolve any doubt as to a fact or an inference to be drawn from the evidence in favor of the party opposing the motion. *Frye v. Trustees of Rumbletown Free Methodist Church*, 657 N.E.2d 745, 747 (Ind.Ct.App. 1995). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996), *trans. denied.*

### Indiana Wage Payment Statute

■ Wank contends that the trial court erred in finding that the severance pay was not a wage subject to Indiana Code Sections 22–2–5–1 and 2, also known as the Indiana Wage Payment Statute. Specifically, he contends that he earned the severance pay by his years of service to St. Francis and that the severance pay is thus deferred compensation. In support of his contention that severance pay is a wage under the statute, Wank cites to Black's Law Dictionary, which defines wages as

[a] compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production. Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, *dismissal wages,* bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him.

BLACK'S LAW DICTIONARY 1579 (6th ed. 1990) (citation omitted) (emphasis added); *see also* IND.CODE § 22–4–4–1 (Indiana Employment Security Act) (defining wages as including "commission, bonuses, dismissal pay, vacation pay"). Wank also argues that St. Francis had a policy providing severance pay to employees who were terminated as a result of the merger and that the policy created an entitlement to the compensation.

St. Francis responds that the severance pay is not a wage under the statute because the compensation was not connected to the work performed by Wank. Further, St. Francis contends that it did not have either a policy providing severance pay or an agreement with Wank that would create an entitlement to compensation. By contrast, St. Francis argues, the severance pay was a "gratuitously offered benefit" that was "directed toward those

displaced from employment by the unusual circumstances presented by the merger with Lutheran College." Appellee's Br. at 8. Thus, the severance pay was not a "wage" subject to the Indiana Wage Payment Statute.

■ Indiana Code Section 22–2–5–1 provides:

(a) Every person, firm, corporation, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. . . .

(b) Payment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment. However, this subsection does not prevent payments being made at shorter intervals than specified in this subsection, nor repeal any law providing for payments at shorter intervals. However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer. . . .

Indiana courts have interpreted Indiana Code Section 22–2–5–1 to create three regulations: " '(1) [employees'] wages must be paid in money; (2) if requested, employers must pay employees semi-monthly or bi-weekly; and (3) employees, upon separation from employment, must be paid the amount due them at their next and usual payday (unless their whereabouts are unknown).' " *Indiana Heart Assocs., P.C. v. Bahamonde,* 714 N.E.2d 309, 311 (Ind.Ct. App.1999) (quoting *Huff v. Biomet, Inc.,* 654 N.E.2d 830, 835 (Ind.Ct.App.1995)), *trans. denied.* An employer who violates any of these regulations is subject to the penalties of Indiana Code Section 22–2–5–2,[1] which provides for liquidated damages,

1. Indiana Code Section 22–2–5–2 provides that

unpaid wages, and attorney fees. *See Fardy v. Physicians Health Rehab. Servs., Inc.*, 529 N.E.2d 879, 882 (Ind.Ct.App. 1988).

▮ Wank alleges that St. Francis violated the third regulation by failing to pay him severance pay upon his separation from employment. *See also* IND.CODE § 22–2–9–2(a) ("Whenever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred...."). We must first determine whether Wank's severance pay falls within the ambit of the statute, that is, whether it is a "wage." The Wage Payment Statute does not provide a definition of "wages" as the term is used in those provisions. Therefore, we must turn to our rules of statutory interpretation. *See Blackmon v. Duckworth*, 675 N.E.2d 349, 351 (Ind.Ct.App.1996). The primary goal in interpreting the meaning of a statute is to determine and effectuate the legislative intent. *Woods v. State*, 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998). To determine the legislative intent, courts must consider the objectives and the purposes of the statute in question and the consequences of the statute's interpretation. *Miller v. State*, 641 N.E.2d 64, 68 (Ind.Ct. App.1994), *trans. denied.* Our case law is instructive in determining the substance of the compensation at issue here.

▮ Initially, we note that "the law in Indiana does not exclude a bonus as wages simply because it is denominated as a 'bonus.'" *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct.App.1992). Such exclusions "would allow employers to escape the statutory penalties by merely labeling compen-

sation as 'bonuses.'" *Id.* In contrast, we consider the substance of the compensation to determine whether it is a wage, and therefore subject to the statute, or a bonus, which is outside the statute. *Id.*

▮ Wages are "something akin to the wages paid on a regular, periodic basis for regular work done by the employee...." *Wilson v. Montgomery Ward & Co.*, 610 F.Supp. 1035, 1038 (N.D.Ind. 1985). Deferred payment of compensation that accrued during an employee's tenure is a wage. *Johnson v. Wiley*, 613 N.E.2d 446, 450 (Ind.Ct.App.1993). For example, vacation pay, earned each week but deferred until a later time, is a wage. *Indiana Heart Assocs., P.C.*, 714 N.E.2d at 312. Likewise, this court has held that compensation that was re-allocated by agreement from insurance premiums to a retirement savings plan was deferred payment and therefore wages. *Johnson*, 613 N.E.2d at 450. Commissions are also wages under the Wage Payment Statute. *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 55 (Ind.Ct.App.1986), *trans. denied.* To qualify as a wage, the compensation must be connected to the work performed by the employee. *Pyle v. National Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind.Ct.App.1994) (stating that compensation that was not linked to the amount of work done by the employee was a bonus, not a wage); *see also Jeurissen v. Amisub, Inc.*, 554 N.E.2d 12, 13 (Ind.Ct. App.1990) (concluding that bonus based on the financial success of the employer and not linked to regular work done on a periodic basis by employee was not a wage), *trans. denied.*

An analysis of similar wage payment and collection statutes in other jurisdic-

---

[e]very such person, firm, corporation, or association who shall fail to make payment of wages to any such employee as provided in [Indiana Code Section 22–2–5–1] shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due,

and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

tions is instructive in the present case. For instance, Illinois law defines wages as "any compensation owed an employee by an employer *pursuant to an employment contract or agreement between the 2 parties,* whether the amount is determined on a time, task, piece or any other basis of calculation." 820 ILL.COMP.STAT. 115/2 (emphasis added). Likewise, Iowa's wage payment collection statute defines wages as compensation for "[v]acation, holiday, sick leave, and severance payments which are due an employee *under an agreement with the employer or under a policy of the employer.*" IOWA CODE § 91A.2 (emphasis added). *See also* OHIO REV.CODE ANN. § 4113.15(D)(1) (defining wage as "net amount of money payable to an employee ...; any deductions made *pursuant to a written agreement* for the purpose of providing the employee with any fringe benefits") (emphasis added); MICH.COMP.LAWS § 408.471 (wage collection act defining wages as "all earnings of an employee ... *except those defined as fringe benefits*"; defining fringe benefits as holiday and sick pay, vacation, bonuses, business expenses) (emphasis added); KY.REV.STAT.ANN. § 337.010 (wage claim statute defining wages as "any compensation due to an employee by reason of his employment, including ... severance or dismissal pay ... and any other similar advantage *agreed upon by the employer and the employee or provided to employees as an established policy*") (emphasis added); NEB.REV.STAT. § 48–1229 (Nebraska Wage Payment and Collection Act) (defining wages as "compensation for labor or services rendered by an employee, including fringe benefits, *when previously agreed to* and conditions stipulated have been met by the employee") (emphasis added); ARIZ. REV.STAT. § 23–350 ("Wages include sick pay, vacation pay, severance pay, commissions, bonuses and other amounts promised *when the employer has a policy or a practice of making such payments.*") (emphasis added).

Our examination of the severance package offered to Wank leads us to the conclusion that the compensation was not a wage as that term is used in Indiana Code Sections 22–2–5–1 and 2. First, the severance package is not connected to work performed by Wank. By contrast, it is based on Wank's years of service. *See Wilson,* 610 F.Supp. at 1038 (noting that bonus, which was based on years of service and had no relation to the time worked, was not a wage); *Jeurissen,* 554 N.E.2d at 13 (concluding that bonus "was not tied to regular work done on a periodic basis by an employee which would have been payable, if requested, on a twice monthly basis"). Second, the severance pay is not deferred compensation, such as vacation pay. The severance pay offered by St. Francis was not compensation that had accrued during Wank's employment. *See New Frontiers, Inc. v. Goss,* 580 N.E.2d 310, 312 (Ind.Ct.App.1991) ("The statute applies only to wages which have already been earned and are due and owing at the time of discharge."), *trans denied.* Rather, it was a bonus offered to Wank to recognize and honor his commitment to St. Francis.

Wank also contends that St. Francis had a policy of granting severance pay to employees and that he was thus entitled to payment. We disagree. The record reveals that St. Francis did not regularly offer severance pay to its employees. In fact, St. Francis had not offered severance pay to exiting employees prior to the merger. Further, St. Francis did not have a written policy providing for severance pay upon termination. We agree with the other jurisdictions cited above that absent a policy creating an entitlement to severance pay, such compensation is not a wage for purposes of the Wage Payment Statute. The severance package at issue in this case was limited to those employees terminated because of the merger. Thus, it was a discretionary, gratuitous benefit offered to employees as an act of benevolence. *See Pyle,* 637 N.E.2d at 1301 (noting that bonus was discretionary and linked to company profitability and, there-

fore, was not a wage); *cf. Alfaro v. Stauffer Chemical Co.*, 173 Ind.App. 89, 362 N.E.2d 500 (1977) (finding that severance pay was not a part of contractual relationship or included in published policy but a voluntary gratuitous benefit and, therefore, could not be enforced by contract claim).

Furthermore, the severance package was never a part of Wank's terms of employment. Similarly, there was no agreement between Wank and St. Francis that a portion of Wank's salary would be allocated as a severance benefit. *See Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 46–47 (Ind.Ct.App.1983) ("An agreement to give vacation pay to employees made before they perform their service, and based upon the length of service and time worked is not a gratuity but rather is in the form of compensation for services. And when the services are rendered, the right to receive the promised compensation is vested...."). Wank could have negotiated for severance pay at the time he was hired. He chose, however, to accept the position in the absence of any promise of severance pay. St. Francis was not obligated to give Wank a severance package; that St. Francis opted to offer severance pay to the employees terminated as a result of the merger does not automatically create an entitlement to such pay. To convert an optional offer of severance pay into a vested right to a wage would require employers to compensate employees, even after their refusal to execute releases, or be subject to liquidated damages and attorney fees under Indiana Code Section 22–2–5–2, despite the fact that there was no agreement creating an entitlement to the compensation. *See* 820 ILL.COMP.STAT. § 115/2 (defining wage as "compensation *owed ... pursuant to an employment contract or agreement*") (emphasis added).

The severance pay offered here was "something extra" in the nature of a bonus and was not a wage subject to the Wage Payment Statute. *See Wilson*, 610

F.Supp. at 1038. Therefore, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and NAJAM, J. concur.