**Bill McCAUSLAND, Appellant–Plaintiff,**

v.

**WALTER USA, INC., Appellee–Defendant.**

No. 49A05–0906–CV–333.

Court of Appeals of Indiana.

Dec. 22, 2009.

Rehearing Denied March 4, 2010.

Ronald E. Weldy, Weldy & Associates, Indianapolis, IN, Attorneys for Appellant.

Tareen Zafrullah, Baker & Daniels LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

After Bill McCausland's ("McCausland") employment terminated with Walter USA, Inc. ("Walter"), McCausland filed a complaint against Walter alleging that Walter failed to pay commission wages as required under the Wage Claims Statute, and failed to timely pay vacation, commission, and bonus wages under the Wage Payment Statute. The parties filed cross-motions for summary judgment. The Marion Superior Court entered summary judgment in favor of Walter and dismissed McCausland's claims with prejudice. McCausland appeals and raises several issues, which we consolidate and restate as whether the trial court erred when it granted Walter's motion for summary judgment. Concluding that Walter was entitled to summary judgment as a matter of law, we affirm.

### Facts and Procedural History

McCausland was employed as a district sales manager for Walter, and was primarily responsible for managing salespeople and assisting them in making sales for the company. During his last three years of employment, McCausland received compensation in the form of salary, commis-

sions, and bonuses. McCausland's monthly commissions were dependent on the net sales for his district. McCausland received a sales achievement bonus and a gross profit bonus in 2006, and those bonuses were earned as a result of sales made in 2005. In 2007, McCausland received a cost bonus because the actual costs incurred for his district in 2006 were less than the budgeted costs. McCausland's employment was terminated on April 1, 2007, because his manager believed that McCausland was "poaching" sales that belonged to other districts.

On September 17, 2007, McCausland filed a complaint against Walter alleging that Walter failed to timely pay his sales commissions, bonuses, and vacation pay throughout the course of his employment, and therefore, he was entitled to damages under the Wage Payment Statute. McCausland also alleged that Walter failed to pay him earned sales commissions following his termination, and therefore, he was entitled to damages under the Wage Claims Statute. In total, McCausland alleged that he was entitled to $106.30 in unpaid sales commissions, and $64,773.74 in liquidated damages.

On August 14, 2008, McCausland filed a motion for summary judgment. Shortly thereafter, Walter filed a cross-motion for summary judgment. Walter argued that McCausland's sales commissions, bonuses, and vacation pay were not "wages" for the purposes of the Ten–Day Rule under the Wage Payment Statute. Concerning the claim for unpaid commissions, Walter argued that the amount was not subject to the Wage Claims Statute. However, Walter also claimed it did not owe the $106.30 at issue because McCausland owed Walter $5,285 for Indianapolis Colts football tickets expensed to the company by McCausland, but not returned after his termination.

On February 25, 2009, the trial court issued an order granting Walter's cross-motion for summary judgment, and denying McCausland's motion. The court therefore entered summary judgment in favor of Walter, and stated in the order that "[a]ll claims in this action are dismissed with prejudice." On March 27, 2009, McCausland filed a motion to correct error,[1] which was deemed denied by operation of Trial Rule 53.3. McCausland now appeals. Additional facts will be provided as necessary.

## Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bushong v. Williamson,* 790 N.E.2d 467 (Ind.2003). On appeal, our standard of review is the same as that of the trial court. Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Olds v. Noel,* 857 N.E.2d 1041 (Ind.Ct.App. 2006). "All inferences from the designated evidence are drawn in favor of the non-moving party." *Hartman v. Keri,* 883 N.E.2d 774, 777 (Ind.2008). Finally, the fact the parties made cross-motions for

---

1. McCausland captioned his motion as a "motion to reconsider." However, McCausland filed his motion "pursuant to Trial Rule 59" and requested that the trial court reverse its order granting summary judgment in favor or Walter. Appellant's App. pp. 9, 22. We therefore treat McCausland's motion as a motion to correct error. *See Hubbard v. Hubbard,* 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998) ("[A] motion requesting the court to revisit its final judgment must be considered a motion to correct error. We decline to favor form over substance and, despite its caption, Mother's motion in the instant case should have been treated as a motion to correct error.").

summary judgment does not alter our standard of review. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind.Ct.App.2006), *trans. denied.*

### I. McCausland's Wage Payment Claims

■ The Wage Payment Statute governs both the frequency and amount an employer must pay its employee. *Naugle v. Beech Grove City Sch.*, 864 N.E.2d 1058, 1062 (Ind.2007); Ind.Code §§ 22–2–5–1 to 22–2–5–3. Indiana Code section 22–2–5–1(a) (2004) provides that "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Indiana Code section 22–2–5–1(b) (2004) provides that "[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment." "An employer who fails to make payment of wages to any employee as provided in Indiana Code section 22–2–5–1 is subject to liquidated damages and attorney fees;[2] I.C. § 22–2–5–2." *Naugle*, 864 N.E.2d at 1063.

■ Our resolution of the issues presented in this appeal turns on the question of whether McCausland's commissions, bonuses, and vacation pay are "wages" as that term is used in the Wage Payment Statute. Indiana Code section 22–2–9–1(b) defines "wages" as, "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount."[3] The name given to the method of compensation is not controlling. *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind.Ct.App.2005) (citing *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct. App.1992)). "Rather, we will consider the substance of the compensation to determine whether it is a wage, and therefore subject to the Wage Payment Statute." *Id.* (citing *Gurnik*, 587 N.E.2d at 709).

■ "We have recognized that wages are 'something akin to the wages paid on a regular periodic basis for regular work done by the employee[.]'" *Id.* (citing *Wank v. St. Francis Coll.*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000)). "In other words, if compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a 'wage.'" *Id.* (citing *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind.Ct.App. 1994)). Moreover, because the Wage Payment Statute imposes a penalty when wages are not paid within ten days of the date they are "earned," it is not practical to apply the statute to payments that cannot be calculated within ten days after being earned. *See Highhouse v. Midwest Orthopedic Inst.*, 807 N.E.2d 737, 740 (Ind. 2004).

#### A. *McCausland's Commissions*

McCausland argues that his commissions are "wages" because the commis-

---

**2.** Walter claims that McCausland may not bring any claims under the Wage Payment Statute because he was fired. However, McCausland's claims concern the alleged untimely payment of commissions, bonuses, and vacation pay that he received while still employed with Walter and unpaid commissions he did not receive after his termination. Therefore, we conclude that he properly brought claims under both the Wage Payment Statute and the Wage Claims Statute. *See* Ind.Code §§ 22–2–5–1; 22–2–9–2.

**3.** The definition of wages is contained in the Wage Claims Statute, however, our courts have also used the definition to address claims under the Wage Payment Statute. *See e.g. Highhouse v. Midwest Orthopedic*, 807 N.E.2d 737, 739 (Ind.2004).

sions "were an integral part of [his] regular compensation." Appellant's Br. at 14. He also claims that "given that the commissions are based upon sales, they are unquestionably performance based compensation. Wages earned based upon performance are 'present' compensation." *Id.* (citing *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 744 (Ind.Ct.App. 2006)). In response, Walter argues that the commissions were not "wages" because "the amount of compensation depended on contingencies such as the financial success of the company and depended on other employees' efforts" and Walter could not reasonably calculate the commissions within the required ten days. Appellee's Br. at 19.

In several cases, our court has held that commissions are "wages" under either the Wage Claims Statute or Wage Payment Statute. *See e.g. Helmuth v. Distance Learning Sys. Ind., Inc.*, 837 N.E.2d 1085, 1091 (Ind.Ct.App.2005); *J Squared, Inc. v. Herndon*, 822 N.E.2d 633, 640 (Ind.Ct. App.2005); *Wank*, 740 N.E.2d at 912. For example, in *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 664–65 (Ind.Ct. App.2008), our court concluded that although the compensation owed to the employee was directly tied to the employer's financial success, where an employee's compensation could be immediately calculated, the employee received only commissions as her salary, and the commissions were paid regularly, the employee's compensation constitutes a "wage" for the purposes of the Wage Payment Statute.

However, in *Gress v. Fabcon, Inc.*, 826 N.E.2d 1 (Ind.Ct.App.2005), our court concluded that the employee's commissions were not "wages" within the meaning of the Wage Payment Statute and stated:

Here, Fabcon's commission program is based upon the profitability of the salesperson's individual projects. The salesperson earns no commission if the project does not result in a profit for Fabcon. The payment of commissions was not directly linked to the amount of work performed by Gress. To be sure, a salesperson could work for an entire year without earning any commissions if none of the projects were profitable. Moreover, although the commissions were paid once each month, the payments were based on the previous month's accounting events for the project—whether all job costs had been paid, whether the job had "closed out," and whether any determination had been made with respect to profitability—rather than on work performed by Gress in the previous month. In short, because of the length of time involved in determining the final commission, it was simply impossible for Fabcon to know what Gress was owed within ten days. In light of all this, we agree with the trial court that Gress's commissions were not "wages" within the purview of the Indiana Wage Payment Statute.

*Id.* at 4 (internal citations omitted).

We reached the same conclusion about the nature of commissions earned and paid in *Davis v. All American Siding & Windows, Inc.*, 897 N.E.2d 936 (Ind.Ct.App. 2008). In that case, the employee's commissions were primarily based on the company's financial success with regard to particular projects. *Id.* at 944. The commission was based on the relationship between the contract price and the par job cost. We noted that "[t]he amount that the contract price exceeds the par job cost—which seems to be an objective estimate of All American's costs based on measurements of the building in question—appears to provide a rough measure of a project's profitability." *Id.* For those reasons and because the commissions could not have been calculated within the

statutorily-mandated ten days, our court concluded that the employee's commissions were not "wages" for the purposes of the Wage Payment Statute. *Id.*

■ In this case, McCausland earned district sales manager commissions based upon the monthly sales made in his district. No sales were directly attributable to McCausland, but were made by the salespeople working in his district. The commissions were based on Walter's net sales, i.e. "sales shipped in the month from [McCausland's] specific district less all discounts, returns or allowances." Appellant's App. p. 125. Walter's Assistant Controller, Chuck Bunker, was required to collect "point of sales information" from Walter's distributors before he could calculate monthly commissions. In addition, some sales called "splits" were shared with multiple sales districts, and Bunker had to wait to calculate commissions until he received information about the "splits" from the distributors. Although Walter requested monthly point of sale information from distributors on the fifth business day of the following month, distributors did not always heed Walter's request. When all point of sales information was collected for each district, Bunker sent the information to the district manager, who would then report which salesperson deserved credit for the sales in question. *Id.* at 122. McCausland admitted that while he could estimate his commission at the end of each month, his commission could not be accurately calculated until Walter received the point of sales information. *Id.* at 130.

McCausland's commissions were based on the success of the salespeople he managed. While McCausland assisted the salespeople he managed in making sales, ultimately, those sales were directly attributable to a salesperson, and not McCausland. In other words, McCausland's commissions were not directly linked to his own efforts. Moreover, the commissions were not based on gross sales, but on "net sales" which required a calculation of not only the gross sales but also other reductions, such as discounts and returns, which McCausland had little control over. Finally, McCausland's commission could not be accurately calculated until Walter received all point of sales information from its distributors. Because McCausland's commissions were based on the efforts of his sales team and "net sales," and the commissions could not always be calculated within the statutorily mandated ten-days, we conclude that the commissions were not "wages" within the meaning of the Wage Payment Statute.

### B. *McCausland's Bonuses*

■ Our supreme court has noted that "[m]any bonuses are not subject to the Wage Payment Statute[.]" *Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1067 (Ind.2007). " '[A] bonus is a wage if it is compensation for time worked and is not linked to a contingency such as the financial success of the company.' " *Id.* (quoting *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 740 (Ind. 2004)). However, if "a bonus is dependent on other facts than the employee's efforts, it is not subject to the Wage Payment Statute." *Id.*

McCausland received three types of bonuses at issue in this appeal: 1) a Gross Profit Bonus in 2005, 2) a Sales Achievement Bonus in 2005, and 3) a Cost Bonus in 2006.

### 1. *The 2005 Gross Profit Bonus*

■ The 2005 Gross Profit Bonus was based upon the difference between the 2004 gross profit margin for McCausland's sales district and the 2005 gross profit margin. Although McCausland defines

the "gross margin" as "net sales less costs," he argues that Walter has not proved that the bonus is based upon profits, and therefore it is a "performance based 'wage' paid to [McCausland] for guiding his sales district in the fashion desired by [Walter]." Br. of Appellant at 15. However, this assertion is inconsistent with McCausland's admission in his deposition that the "gross profit bonus" was based strictly on "increasing gross profit." Appellant's App. p. 133. From McCausland's own definition of "gross margin" and his deposition testimony, we conclude that the Gross Profit Bonus was linked to the Walter's financial success, i.e. its increase in profits. Therefore, the bonus was not a "wage" as that term is defined in the Wage Payment Statute.

### 2. The 2005 Sales Achievement Bonus

█ The 2005 Sales Achievement Bonus was based on McCausland's sales district's annual sales and was computed by comparing budgeted sales to actual sales. As we noted in our discussion regarding McCausland's commissions, no sales during this time period were directly attributable to McCausland. Certainly, McCausland's efforts contributed to his districts annual sales figures. However, his receipt of this bonus was dependent on his district's sales team's efforts as well. Therefore, the bonus is not subject to the Wage Payment Statute. See Naugle, 864 N.E.2d at 1067.

### 3. The 2006 Cost Bonus

█ The Cost Bonus was calculated by comparing the actual expenses of McCausland's sales district to the budgeted expenses. The expenses included lodging, entertainment, cell phones, office supplies, and demonstration stock. Appellant's App. p. 354. McCausland states that he earned the bonus "for his efforts to keep the costs of his salespeople within the pa-

rameters desired by [Walter]." Appellant's Br. at 16. Again, we agree with McCausland that his efforts contributed to controlling the expenses for his sales district. However, his salespeople also played a role in determining the amount of expenses incurred for the sales district. Therefore, we conclude that the Cost Bonus was not a "wage" as that term is defined in the Wage Payment Statute.

### C. McCausland's Vacation Pay

█ In 2006, Walter decided to change its vacation pay policy effective January 1, 2007. Because of the new policy, accrued and unused vacation time was paid to each employee. McCausland argues that because the new policy went into effect on January 1, 2007, his accrued and unused vacation time became "due and owing" as of that date. Walter did not pay McCausland for his accrued vacation time until February 8, 2007, and therefore, McCausland argues that Walter violated the Ten–Day Rule. Br. of Appellant at 18.

█ While there is no legal requirement to compensate for unused vacation time, if such time is to be compensated, it is deferred compensation in lieu of wages. Naugle, 864 N.E.2d at 1067. Therefore, compensated vacation pay is considered a "wage" and is subject to the provisions of the Wage Payment Statute. Id. Yet, payment for vacation pay is typically deferred because "the accrual of vacation is unknown until termination of the employment. Absent an agreement to the contrary, an employee is not entitled to accrued vacation pay until termination." Id. For this reason, vacation pay is not subject to the Ten–Day Rule until termination. Naugle, 864 N.E.2d at 1067 (citations omitted).

The parties agree that Walter decided to pay any unused vacation time that had accrued prior to the January 1, 2007 effec-

tive date of the new paid-time off policy. The vacation time policy in effect prior to January 1, 2007, did not contain any provision for payment of vacation time except that "[e]mployees who terminate will receive pay for earned but unused vacation time." Appellant's App. p. 270. Walter did not agree to pay the accrued, unused vacation time by any date certain, just as was reasonably practicable. Walter's Director of Human Resources stated that employees were providing information about their unused vacation time up to January 31, 2007, and that calculating and paying "the vacation payout had to take place in conjunction with closing the books out for the year of 2006." *Id.* at 286–87.

Because there was no agreement to the contrary, Walter did not run afoul of the Wage Payment Statute when it paid McCausland for his unused, accrued vacation time on February 8, 2007. Moreover, McCausland received the payment for his accrued, unused vacation time prior to his termination on April 1, 2007.

### II. McCausland's Wage Claims Statute Argument

Indiana Code section 22–2–9–2 provides that "[w]henever any employer separates any employee from the pay-roll, the unpaid wages or compensation of such employee shall become due and payable at regular pay day for pay period in which separation occurred[.]" McCausland argues that Walter violated the Wage Claims Statute by failing to pay commissions in the amount of $106.30 that were due and owing at the time of his termination. Walter states that this amount equals one day's prorated commission for April 1, 2007.

As we stated above, McCausland's commissions were not "wages" within the meaning of the Wage Payment Statute, and for those same reasons, the commissions are not "wages" under the Wage Claims Statute. Moreover, Walter notes that the commission was not paid because McCausland owes the company $5284.00 for Colts tickets he retained possession of that belonged to Walter. McCausland does not dispute Walter's claim regarding the Colts tickets.

### Conclusion

McCausland's commissions and bonuses were not "wages" within the meaning of the Wage Payment and Wage Claim Statutes. Also, Walter's payment of McCausland's accrued and unused vacation time did not run afoul of the Wage Payment Statute. For all of these reasons, the trial court properly granted Walter's motion for summary judgment.

Affirmed.

DARDEN, J., and ROBB, J., concur.