Ben LIFE and Elaine Life, Appellants–Plaintiffs,

v.

F.C. TUCKER COMPANY, INC.; LT, Inc. d/b/a Tucker Home Link; M–One Development, LLC; P. Nathan Thornberry, individually and d/b/a M–One, LLC, M–One Development, LLC, Maintenance One, LLC, and Maintenance One Services Company; M–One Contracting, LLC and Timothy Martin d/b/a Maintenance One Service Company, Appellees–Defendants.

No. 49A02–1008–CC–931.

Court of Appeals of Indiana.

April 28, 2011.

Merle B. Rose, Indianapolis, IN, Attorney for Appellants.

Ellen M. Townsend, Anthony S. Ridolfo, Hackman Hulett & Cracraft, LLP, Indianapolis, IN, Attorneys for Appellees, F.C. Tucker Company, Inc. and LT, Inc. d/b/a Tucker Home Link.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants-plaintiffs Ben Life and Elaine Life ("the Lifes") appeal from the trial court's denial of their motion to correct error following its summary judgment in favor of appellees-defendants F.C. Tucker Company, Inc. ("F.C. Tucker") and LT, Inc. d/b/a Tucker Home Link ("Home Link") (collectively, "Tucker"). We affirm.

### Issues

The Lifes raise two issues for our review, which we restate as:

I. Whether the trial court erred in striking as untimely their response to Tucker's motion for summary judgment and their attached affidavits; and

II. Whether the trial court erred in denying their motion for partial summary judgment and granting Tucker's motion for summary judgment.

## Facts and Procedural History

F.C. Tucker is a real estate company whose principal office is located in Indianapolis, Indiana. Home Link is a company affiliated with F.C. Tucker that provides "its customers direct access to various retailers/service suppliers." Home Link entered into a marketing agreement with Maintenance One Services Co. ("Maintenance One"), whereby Home Link would promote Maintenance One's services, and Maintenance One would pay Home Link an annual fee of $3000 and five percent of the total gross bill before taxes for all services rendered to customers of the Home Link program. When Ben Life was looking for a home builder, Home Link referred him to Maintenance One, and on March 12, 2007, the Lifes entered into a contract with "M–One, LLC" for the purchase and construction of a house.

In April 2009, the Lifes filed suit against Maintenance One,[1] as well as F.C. Tucker and Home Link as unnamed partners, alleging breach of the construction contract and negligent construction of their home. On March 30, 2010, Tucker filed a motion for summary judgment with a supporting brief and designation of evidence. The Lifes responded on May 12, 2010, with "Plaintiff's Response to Tucker's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment" along with a supporting memorandum, designation of evidence, and affidavits from Ben Life and Amanda Stetzel. On June 14, 2010, Tucker filed its response to the Lifes' motion for partial summary judgment, and contemporaneously filed a "Motion to Strike Plaintiff's Untimely Response to Motion for Summary Judgment and Motion to Strike Plaintiff's Motion for Partial Summary Judgment," as well as a "Motion to Strike Affidavits of Ben Life and Amanda Stetzel."

The trial court held a hearing on June 25, 2010 to address all of these matters, and on June 28, 2010, it issued an order striking the Lifes' response to Tucker's motion for summary judgment, an order striking the affidavits of Ben Life and Amanda Stetzel, an order denying the Lifes' motion for partial summary judgment, and an order granting Tucker's motion for summary judgment. The Lifes filed a motion to correct error on July 26, 2010, which the trial court denied on August 2, 2010. The Lifes now appeal.

## Discussion and Decision

### Standard of Review

A trial court has broad discretion when granting or denying a motion to correct error, and we will reverse its decision only when it abuses that discretion. *White v. White*, 796 N.E.2d 377, 379 (Ind.Ct.App. 2003). A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn therefrom, or if the trial court has misinterpreted the law. *Hawkins v. Cannon*, 826 N.E.2d 658, 662 (Ind. Ct.App.2005), *trans. denied.*

We also consider the standard of review for the underlying ruling. *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1234 (Ind.Ct.App.2007). Here, the Lifes assert that the trial court erred in granting Tucker's motion for summary judgment and denying their motion for partial summary judgment. Pursuant to Indiana Trial Rule 56(C), summary judgment is appropriate when there are no genuine issues of mate-

---

1. Specifically, the Lifes named M–One Development, LLC; P. Nathan Thornberry, individually and d/b/a M–One, LLC, M–One Development, LLC, Maintenance One, LLC, and Maintenance One Services Company; M–One Contracting, LLC; and Timothy Martin d/b/a Maintenance One Services Company. None are a party to this appeal.

rial fact and when the moving party is entitled to judgment as a matter of law. "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Mahan v. American Standard Ins. Co.*, 862 N.E.2d 669, 675 (Ind.Ct.App.2007) (quoting *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind.Ct.App. 1991)), *trans. denied*.

On review of a trial court's decision to grant or deny summary judgment, this Court applies the same standard as the trial court. *Wank v. Saint Francis College*, 740 N.E.2d 908, 910 (Ind.Ct.App. 2000), *trans. denied*. Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. *Id.* All evidence is construed in favor of the opposing party and all doubts as to the existence of a material issue must be resolved against the moving party, but once the movant has carried his burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues. *Mahan*, 862 N.E.2d at 675–76. "If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted." *Id.* at 676. The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Wank*, 740 N.E.2d at 910.

### Motion to Strike

■ The Lifes first argue that the trial court erred by failing to consider their motion for partial summary judgment on its merits and improperly striking their response to Tucker's motion for summary judgment and their attached affidavits. More specifically, the Lifes maintain that, regardless of when their response to Tucker's motion for summary judgment was due, they are entitled to move the court for partial summary judgment and designate evidence at any time. We disagree.[2]

Indiana Trial Rule 56(C) states that "[a]n adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." A court may, for cause found, "alter any time limit set forth in this rule upon motion *made within the applicable time limit.*" Ind. Trial Rule 56(I) (emphasis supplied). However:

> [i]f the non-moving party fails to respond to a motion for summary judgment within thirty days, by either (1) filing affidavits showing issues of material fact, (2) filing his own affidavit under Rule 56(F) indicating why the facts necessary to justify his opposition are unavailable, or (3) requesting an extension of time in which to file his response under 56(I), then a trial court lacks discretion to permit that party to thereafter file a response. In other words, a trial court may exercise discretion and alter time limits under 56(I) only if the nonmoving party has responded or sought an extension within thirty days from the date the moving party filed for summary judgment.

*Desai v. Croy*, 805 N.E.2d 844, 849 (Ind. Ct.App.2004), *trans. denied*.

Although Indiana case law was inconsistent on this issue in the past, "[a]ny resid-

---

2. Initially we note for clarification that, contrary to the Lifes' contention, there is no indication that the trial court did not consider their motion for partial summary judgment on its merits. In fact, Tucker initially requested that the Lifes' motion for partial summary judgment be stricken, but the trial court refused and denied it in a separate order.

ual uncertainty was resolved in 2005 when [our supreme court] cited *Desai* with approval and declared:

> When a nonmoving party fails to respond to a motion for summary judgment within thirty days by either filing a response, requesting a continuance under Trial Rule 56(I), or filing an affidavit under Trial Rule 56(F), the trial court cannot consider summary judgment filings of that party subsequent to the 30–day period."

*HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95, 98–99 (Ind.2008) (quoting *Borsuk v. Town of St. John*, 820 N.E.2d 118, 124 n. 5 (Ind.2005)).

Here, Tucker served its motion for summary judgment on March 29, 2010. The Lifes filed their response with a designation of evidence and attached affidavits more than thirty days later on May 12, 2010. The Lifes' response was therefore late, and, consequently, the trial court did not err in striking it along with the designation of evidence and attached affidavits.

That the Lifes' response and attached affidavits are also attached to a motion for partial summary judgment is of no moment. The rule of *Desai* is a "bright line rule both for trial courts and the parties who litigate summary judgment motions," 805 N.E.2d at 849. While we certainly acknowledge that Trial Rule 56(a) allows for claimants to move for partial summary judgment *"at any time* after the expiration of twenty [20] days from the commencement of the action or after service of a motion for summary judgment by the adverse party," (emphasis supplied), the Lifes may not be permitted to bypass established rules of trial procedure by cloaking their response in another procedural mechanism. Doing so would render meaningless Trial Rule 56(C)'s time limit of thirty days and allow litigants to respond to summary judgment motions at their leisure so long as they also included their own such motion. Ultimately, though, the trial court's refusal to strike the motion itself makes no difference in this case because Tucker no longer objects to the trial court's consideration of the Lifes' motion (Appellee's Br. p. 9), and, as we discuss below, a cross motion for summary judgment does not alter our standard of review.

### Summary Judgment

■ The Lifes next argue that the trial court erred by granting Tucker's motion for summary judgment. Tucker maintains that it is entitled to summary judgment because it was not a party to the Lifes' contract and, as an independent contractor with Maintenance One, it owed the Lifes no duty of care as to construction of their home. The Lifes respond that Tucker is an unnamed partner with Maintenance One, and therefore may be held liable for breach of contract and negligence.

■ "It is well established that in a partnership the partners are bound by the contracts of each other when made in the scope of the firm's business." *Gallatin Group v. Central Life Assur. Co.*, 650 N.E.2d 70, 73 (Ind.Ct.App.1995). Moreover, "each of the partners, while engaged in the prosecution of the partnership business, is the agent of the firm, and it necessarily follows that a partnership is liable in damages for the negligence of each of its members in conducting the partnership business." *Kopka v. Yockey*, 76 Ind.App. 218, 131 N.E. 828, 829 (1921). Thus, if Tucker is a partner with Maintenance One, it may be liable for breach of contract and negligence in pursuit of that partnership.

■ A partnership is an association of two or more persons to carry on as co-owners of a business for profit. Ind.Code § 23–4–1–6(1). A "person" may be an individual, partnership, limited liability com-

pany, corporation, or other association. I.C. § 23–4–1–2. The two requirements of a partnership are: (1) a voluntary contract of association for the purpose of sharing profits and losses which may arise from the use of capital, labor, or skill in a common enterprise; and (2) an intention on the part of the parties to form a partnership. *Weinig v. Weinig*, 674 N.E.2d 991, 995 (Ind.Ct.App.1996).

As to the first partnership element, receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner of the business, unless the monies are wages or other specifically enumerated payments. I.C. § 23–4–1–7(4); *also Monon Corp. v. Townsend, Yosha, Cline & Price*, 678 N.E.2d 807, 810 (Ind. Ct.App.1997), *trans. denied.* However, "[t]he sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." I.C. § 23–4–1–7. In this case, the marketing agreement indicates that Home Link and Maintenance One agreed to share returns, not profits. Exhibit C2 of the agreement states that Maintenance One will pay a transaction fee "equal to 5% of the *total gross bill (before taxes)* for all services rendered to customers of [Home Link]." Appellee's App. p. 36 (emphasis supplied). The clause indicates nothing about also sharing in Maintenance One's losses, and on its face it appears that Tucker receives its fee regardless of whether Maintenance One profits from constructing homes. This arrangement for a share of the total gross bill falls short of "co-ownership" or a "community of profits" exhibited in a partnership. *Kamm & Schellinger Co. v. Likes*, 93 Ind.App. 598, 179 N.E. 23, 25 (1931). Thus, we conclude that Maintenance One and Tucker did not engage in profit sharing, and the Lifes have not properly marshaled any facts to the contrary.

With regard to intent, the second element of partnership creation, it has long been the law in Indiana that:

[t]he intent, the existence of which is deemed essential, is an intent to do those things which constitute a partnership. Hence, if such an intent exists, the parties will be partners, notwithstanding that they proposed to avoid the liability attaching to partners or (have) even expressly stipulated in their agreement that they were not to become partners. It is the substance, and not the name of the arrangement between then, which determines their legal relation towards each other, and if, from a consideration of all the facts and circumstances, it appears that the parties intended, between themselves, that there should be a community of interest of both the property and profits of a common business or venture, the law treats it as their intention to become partners, in the absence of other controlling facts.

*Bacon v. Christian*, 184 Ind. 517, 111 N.E. 628, 630 (1916).

The marketing agreement between Home Link and Maintenance One states that no partnership is formed by the agreement, and according to Elaine Sholty, President of Home Link, Tucker had no involvement in the preparation or negotiation of the construction contract or the building of the Lifes' house, and did not warrant or guarantee the proper performance of Maintenance One's performance. While the partnership renunciation clause and Ms. Sholty's statements are not conclusive as to the absence of a partnership, because we look to the substance of the relationship, not how the parties describe it, *id.*, the Lifes have not properly offered any evidence to rebut Tucker's evidence. Although the existence of a partnership is generally a question of fact, *Weinig*, 674 N.E.2d at 994, given the lack of profit sharing and lack of evidence of intent to form a partnership, the trial court could

have properly concluded Maintenance One and Home Link were not partners.

■ Instead of partners, then, Home Link and Maintenance One's relationship was one of independent contractors. Thus, the next issue to address is whether, as an independent contractor, Tucker is entitled to summary judgment on the Lifes' claims of breach of contract and negligence. As an independent contractor rather than a partner, Maintenance One did not have the authority to contractually bind Tucker, and "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind.Ct. App.1993). Here, the contract was signed by "M–One, LLC" and the Lifes, not F.C. Tucker or Home Link. Therefore, there is no contract between Tucker and the Lifes, and summary judgment for Tucker on the breach of contract claim was appropriate.

■ We next turn to the Lifes' negligence claim. In order to prevail on a claim of negligence, a plaintiff must show: (1) a duty owed to the plaintiff by the defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *King v. Northeast Security, Inc.,* 790 N.E.2d 474, 484 (Ind.2003). Because the Lifes have alleged negligent work in the construction of their house, any duty that Tucker may have owed the Lifes would have arisen as a result of the construction contract. Notwithstanding the issue of whether Tucker was even in con-

tractual privity with the Lifes, "[t]he rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Greg Allen Const. Co. v. Estelle,* 798 N.E.2d 171, 175 (Ind.2003). "Typically, damages recoverable in tort from negligence in carrying out the contract will be for injury to the person or physical damage to property, and thus 'economic loss' will usually not be recoverable." *Id.* In other words, there would be no claim of injury here that the law would protect (negligent construction of a home) if there was no contract making it the Lifes' home, and, as was discussed above, Tucker was not even a party to the contract. Summary judgment for Tucker on the negligence claim was appropriate.

### Conclusion[3]

■ The trial court properly struck the Lifes' response to Tucker's motion for summary judgment and their attached affidavits. There is no genuine issue of material fact as to the claims for breach of contract and negligence. Therefore, summary judgment in Tucker's favor was warranted, and the trial court did not abuse its discretion in denying the Lifes' motion to correct error.

Affirmed.

FRIEDLANDER, J., and BROWN, J., concur.

---

3. Tucker urges us to award it damages in the form of appellate attorney fees, but we decline to do so. Indiana Appellate Rule 66(E) provides that "[t]he court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." However, our discretion to award attorney's fees is lim-

ited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind. Ct.App.2003). We do not think that the Lifes' appeal rises to the level of appellate abuse and it does not warrant damages.