**Larry D. MOORE, Appellant–Respondent,**

**v.**

**Michelle A. (Moore) MILLER, Appellee–Petitioner.**

No. 48A02–9608–CV–518.

Court of Appeals of Indiana.

Jan. 27, 1997.

covered in part by statutes and rules imposing attorney fees for suits brought in bad faith.

William Byer, Jr., Anderson, for Appellant–Respondent.

## OPINION

FRIEDLANDER, Judge.

Larry D. Moore appeals from the Madison Superior Court's determination that it had jurisdiction to modify a prior custody determination and award custody of the two minor children born to Michelle A. Miller (Miller),[1] formerly Michelle Moore. Moore presents the following consolidated, restated issue for review:

Did the trial court have subject matter jurisdiction to modify the custody determination of the Iowa court?

We reverse.[2]

The undisputed facts are that Moore, a member of the United States Air Force, and Miller were married in late 1988. In 1990, the parties obtained a divorce while he was stationed in the Territory of Guam by a court in that jurisdiction. Custody of Miller's two minor children was awarded to Miller. In January 1992, Miller married Ted Miller in Tucson, Arizona. In 1994, the Millers, including the two minor children, resided in Council Bluffs, Iowa. Sometime during that

year, Ted Miller lost his job and he and Miller decided to move to Las Vegas, Nevada to find work. On February 18, 1994, Michelle and her husband left the children with Moore's mother and step-father, who also lived in Council Bluffs. On March 24, 1994, Moore filed a petition for modification in the Iowa District Court for Pottawattamie County, seeking custody of the children on the ground that they had been abandoned by Miller.

On May 19, 1994, the Iowa court granted temporary custody of the children to Moore's parents and the parties agreed that the court would conduct a hearing in August 1994 and then "do what is to the best interest of the children, that is, grant custody either to Petitioner, Respondent, or grandparents." *Record* at 208. After an August 5 hearing, the court awarded permanent custody to Moore, based upon the following findings:

a. That [Miller] failed to provide for the basic needs of the children, including educational and medical.

b. That [Miller] abandoned the children leaving them in the care, custody and control of the children's paternal grandparents.

c. That [Moore] is able to offer the children a more stable environment than [Miller].

*Record* at 23.

On July 17, 1995, Miller filed a Petition for Emergency Custody and Modification of Child Custody in Madison Superior Court. At the time the emergency modification petition was filed, the children had been visiting Miller in Indiana for approximately one month. In the petition, Miller alleged that during the visit she "had been alerted to the fact that [the children had] been physically abused" by Moore. *Id.* at 5. The Madison Superior Court granted temporary custody to Miller and set the matter of permanent modification for hearing on August 30, 1995. On August 15, 1995, Moore submitted a Motion to Dismiss for Lack of Jurisdiction. On

---

1. Moore is not the natural father of the oldest child, who was born in May 1988. Moore is the natural father of the second child, born in June 1989.

2. We note that Miller failed to file an appellate brief in support of the trial court's determination.

August 28, the court denied Moore's motion to dismiss.

The final hearing was conducted on February 21, 1996, after which the Madison Superior Court awarded custody of the children to Miller. We reproduce the following portions of the custody order because they set forth the Madison Superior Court's findings and conclusions regarding the issue presented upon appeal.

It is unclear what the basis was for the Iowa Court's assumption of jurisdiction. That Court found specifically that the mother was a resident living in Anderson, Indiana at the same address at which she presently resides. The Iowa order specifically found the respondent to be a resident of Tucson, Arizona. The Iowa order does not explain the basis of that Court's assumption of jurisdiction. It makes no finding as to the residence of the children or their whereabouts. There is no reference to the Uniform Child Custody Jurisdiction Act therein.

The Iowa Court was without jurisdiction to modify the Guam decree. That court could, under certain circumstances, change custody of the children, but there were no preliminary findings that would have been necessary for assumption of such jurisdiction. Respondent has argued that he was in fact a resident of Iowa and had never ceased to be such due to his status as a member of the armed services. There may be merit to that argument but it seems to have been unknown by the Iowa Court. This Court denied the respondent's motion to dismiss the emergency petition filed herein.

A Motion to Correct Errors was filed by respondent, and it was denied for the reason that it is in the best interest of the children that a Court of this state assume jurisdiction because the children and at least one of their parents have significant connection with this state, and there is available in this state substantial evidence concerning the children's present and future care, protection, training and personal relationships; and further, the children were and are physically present in this state.

\* \* \* \* \* \*

The Court further states that it considers the order of the Iowa Court to be a nullity in that that Court did not actually have authority to modify the dissolution decree of the Guam Territorial Court dated January of 1991. That decree granted custody of the minor children to the petitioner-wife. Under certain circumstances, the Iowa Court might have changed custody of the children pursuant to the terms of the Iowa version of the Uniform Child Custody Jurisdiction Act. The Iowa Court did not make such findings and only seems to have intended to tamper with the provisions of a foreign decree without the necessary incidences of jurisdiction.

*Id.* at 43–45. Moore appeals the Madison Superior Court's determination that it had jurisdiction to modify custody.

 As an initial matter, we disagree with the Madison Superior Court's determination that the Iowa court was without jurisdiction to modify the Guam decree. This conclusion was apparently based upon the Iowa court's failure to set forth the basis of its assumption of jurisdiction, e.g., the existence of certain jurisdictional prerequisites such as the parties' state of residence.

We agree that the Iowa modification order does not clarify, through formal findings of fact, the facts underlying its assumption of jurisdiction. However, the Iowa court stated that the children had been abandoned, and Miller did not challenge the factual basis upon which that determination rested in either the Iowa or Indiana proceedings. That is, Miller did not deny that she left the children with Moore's parents in Iowa while she and her husband went to Las Vegas. *See* Iowa Code Ann. § 598A.3(c). Moreover, at the time Miller left the children with Moore's parents in February 1994, she had custody of the children and had lived in Iowa since June 1993. Therefore, Iowa was the children's home state as defined in Iowa's Uniform Child Custody Jurisdiction Act. *See* Iowa Code Ann. §§ 598A.3(1)(a) and 598A.2(5). Notwithstanding the Iowa court's failure to fully set forth the facts upon which

it concluded that it had jurisdiction to modify the Guam custody decree, the Iowa court was vested with jurisdiction and its modification order was valid.

■ Moore contends that the Madison Superior Court was without jurisdiction to make a custody determination in this cause. Both parties correctly acknowledge that an Indiana court's jurisdiction to decide custody matters having interstate dimensions, such as the instant case, is governed by the Uniform Child Custody Jurisdiction Law (UCCJL), Ind.Code Ann. § 31–1–11.6–1 *et seq. See Williams v. Williams,* 555 N.E.2d 142 (Ind.1990); *Ashburn v. Ashburn,* 661 N.E.2d 39 (Ind.Ct.App.1996), *trans. denied.* A trial court must first determine in such cases whether it has jurisdiction and, if it does, whether to exercise that jurisdiction. *Williams,* 555 N.E.2d 142; *Ashburn,* 661 N.E.2d 39. Upon review of such determinations, we apply an abuse-of-discretion standard. *Ashburn,* 661 N.E.2d 39.

The relevant UCCJL provision states:

Sec. 3. Jurisdiction. (a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IC § 31–1–11.6–3 (West Supp.1996).

Jurisdiction is established under subsection (1) only if Indiana is or has been the home state of the children. *See In re Marriage of Hudson,* 434 N.E.2d 107 (Ind.Ct. App.1982). "Home state", in this context, is defined in the UCCJL as follows:

"[H]ome state" means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six month or other period.

■ In the instant case, at the time Miller filed her emergency petition, the children had been present in Indiana for approximately only one month. Moreover, their presence in Indiana at the time was attributable to visitation with Miller. Prior to the visit, the children had resided with Moore in Arizona from approximately August 28, 1994 [3] until

---

**3.** At the February 20, 1996 custody hearing in the Madison Superior Court, Moore testified that

he and the children returned to Arizona "about ten days", *Record* at 144, after the August 5

they left to visit Miller. The short time the children spent in Indiana with Miller prior to the filing of the emergency petition is a "period of temporary absence" within the meaning of IC § 31–1–11.6–2(5), and, as such, is regarded as time spent in Arizona for purposes of determining the children's home state. *See Hudson,* 434 N.E.2d 107.

Accordingly, at the time Miller filed the petition in Indiana, the children had resided in Arizona for at least the preceding six months. We conclude, therefore, that jurisdiction was not extended to the Madison Superior Court pursuant to subsection (1) because Indiana was not the children's home state as that term is defined in the UCCJL.

■ In order to confer jurisdiction under subsection (2), Miller must establish the following criteria: a) the children and Moore have a significant connection with the State of Indiana; and b) there is substantial evidence in Indiana regarding the children's present or future care, protection, training, and personal relationships. Inasmuch as the IC § 31–1–11.6–2 is written in the conjunctive, *both* criteria must be established in order to confer jurisdiction.

With regard to the first criteria, this court has held that the "significant connection" test may be applied in order to exercise jurisdiction under the UCCJL only when the child does not have a home state, so that the "home state" test set out above does not apply. *See Ruppen v. Ruppen,* 614 N.E.2d 577 (Ind.Ct.App.1993); *Williams v. Williams,* 609 N.E.2d 1111 (Ind.Ct.App. 1993).

As set out previously in our discussion of subsection (1), at the time Miller filed the emergency custody petition in the Madison Superior Court, the children had resided in Arizona for approximately ten months. Therefore, pursuant to IC § 31–1–11.6–2, Arizona was the children's home state. Because the children had a home state other than Indiana, the significant connection test was inapplicable and jurisdiction could not be established under subsection (2).

■ In order to confer jurisdiction under subsection (3), it was incumbent upon Miller to demonstrate that the children had been abandoned. Miller did not allege, much less establish, that the children had been abandoned, nor could she. At the time Miller filed the emergency petition, the children were visiting at Miller's house. Therefore, the court did not acquire jurisdiction pursuant to subsection (3).

■ In order to establish jurisdiction under subsection (4), two requirements must be met. First, it must appear that no other state would have jurisdiction under subsections (1)-(3), or that another state that is the children's home state declined jurisdiction. As set out above, Arizona is the home state of the children as the term is defined, and would therefore have jurisdiction under the UCCJL. Thus, the first criterion set out in subsection (4) is not met.

Because the two requirements in subsection (4) are listed in the conjunctive, both must be present in order to confer jurisdiction upon the Madison Superior Court. Therefore, the absence of the first requirement obviates the need to examine the second. The Madison Superior Court does not have jurisdiction pursuant to subsection (4).

■ In summary, the Iowa court entered a valid order modifying the Guam decree and awarding custody to Moore. Pursuant to the Iowa modification, the children moved to Arizona for a sufficient period of time to establish Arizona as their "home state" within the meaning of the UCCJL. Because 1) Arizona was the children's home state, 2) they had not been abandoned, and 3) an Arizona court has not declined jurisdiction over an action to modify custody on the ground that Indiana is the more appropriate forum, we conclude that the Madison Superior Court did not have subject matter jurisdiction to modify the Iowa decree. This cause is remanded to the Madison Superior Court with instructions to dismiss Miller's Petition for Emergency

hearing. However, the Iowa court did not issue the custody order following the hearing until

August 18.

Custody and Modification of Child Custody for lack of subject matter jurisdiction.

Judgment reversed.

KIRSCH and STATON, JJ., concur.