Heather M. STEWART, Appellant–Respondent,

v.

Jeffrey J. STEWART, Appellee–Petitioner.

No. 34A02–9809–CV–768.

Court of Appeals of Indiana.

April 21, 1999.

Ronald L. Hoppes, Legal Services Program of Northern Indiana, Inc., Lafayette, Indiana, Attorney for Appellant.

Michael O. Bolinger, Bolinger, Bolinger & Kuntz, Kokomo, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Heather Stewart (Mother) appeals from an order in a decree of dissolution awarding custody of her daughter, Summer, to Jeffrey Stewart (Father), Heather's ex-husband and the child's natural father. Mother presents several issues for review, one of which is dispositive of the appeal. We restate that issue as follows:

> Did the Howard Superior Court have subject matter jurisdiction to make a child custody determination with regard to Summer?

We reverse and remand with instructions.

The facts favorable to the judgment are that Mother and Father were married on February 8, 1993 in Wake County, North Carolina. Summer was born to the marriage on February 3, 1994. Mother and Father separated on August 15, 1994. On August 30, 1994, a district court in Wake County, North Carolina granted Mother's petition for a restraining order against Father and entered a Domestic Violence Protective Order. The order awarded temporary custody of Summer to Mother and forbade Father from having contact with Mother. By its own terms, the protective order was effective for one year. After the separation, Father lived with friends in North Carolina until December 24, 1994, when he moved to Kokomo in Howard County, Indiana.

Summer continued to reside with her mother in North Carolina until July 1995. Father was in North Carolina at that time to visit Summer when Mother asked Father to take Summer to live with him for a month to six weeks, until Mother "could get her life back together." *Record* at 122. Father returned to Howard County, Indiana with Summer on July 10, 1995. On October 13, 1995, Father filed a petition for dissolution of marriage in Howard County. Contemporaneous with the filing of the dissolution petition, Father filed a Petition for Temporary Custody, seeking temporary custody of Sum-

mer. The court awarded Father temporary custody of Summer pending a hearing, which was set for November 8, 1995. At the November 8 hearing, Mother appeared and filed an objection to the Howard Superior Court's jurisdiction. She also submitted a copy of a Complaint and Motion for Emergency, Temporary and Permanent Custody, which she had filed in a trial court in Wake County, North Carolina two days earlier on November 6.

On May 22, 1996, the Howard Superior Court conducted a hearing on Mother's objection to jurisdiction. The court entered special findings and conclusions and ruled that it had jurisdiction over the custody question. Following a final hearing, the court entered a decree of dissolution on April 17, 1998,[1] including the following findings and conclusions relative to the custody determination:

a. The Petitioner (Father) has a long, successful track record at taking care of the child without incident.

b. The Petitioner has a support system in place, namely, his parents and friends, who are willing to assist with the child.

c. The Petitioner has a long-time, permanent residence.

d. There is no significant evidence of any drug or alcohol abuse on the part of the Petitioner.

e. The Petitioner has steadily improved his employment during the pendency of the action and the Court believes that his increased financial ability will aid in providing a stable atmosphere for the minor child.

f. The Petitioner participated in a home study which was favorable to him.

g. The Petitioner's witnesses indicate that he has a healthy, loving relationship with his daughter, who has love and respect for her father.

5. In deciding the custody issue, the Court was particularly concerned with the following facts in regard to the Respondent (Mother):

a. She is minimally employed and shows now [sic] indication of intending to advance her employment possibilities.

b. That the Respondent has made no serious effort to further her education.

c. That the Respondent is financially dependant [sic] upon the goodwill of her present boyfriend.

d. That the Respondent is unable to drive an automobile, which would limit her ability to care for the child, not only in an emergency, but in dealing with her day to day needs.

*Record* at 159–160.

■ Mother contends that the Howard Superior Court did not have subject matter jurisdiction over the custody issue. The question of whether the court has jurisdiction to make a child custody determination must be made by resort to the Uniform Child Custody Jurisdictional Law (the UCCJL), which is codified at Ind.Code Ann. § 31–17–3, *et seq.* This is true even when an Indiana court has jurisdiction over a dissolution by virtue of that action having been filed in this state. *Stevens v. Stevens,* 682 N.E.2d 1309 (Ind.Ct.App.1997). We review a trial court's exercise of jurisdiction under the UCCJL for abuse of discretion. *Moody v. Moody,* 488 N.E.2d 378 (Ind.Ct.App.1986).

The relevant UCCJL jurisdictional provision states:

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

1. On July 26, 1996, the trial court granted Mother's Motion for Continuance and Motion to Certify Interlocutory Order for Appeal. On January 22, 1997, this court granted Father's motion to dismiss the appeal on grounds that Mother had not timely filed her appellate brief.

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

(b) Except under paragraphs (3) and (4) of subsection (a) physical presence in this state of the child, or of the child and one (1) of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

(c) Physical presence of the child, while desirable, is not prerequisite for jurisdiction to determine his custody.

IC § 31–17–3–3.

Father concedes that Indiana was not the "home state" of the child within the meaning of subparagraph (a)(1). Therefore, the Howard Superior Court does not have jurisdiction pursuant to that provision.

As a prerequisite to establishing jurisdiction under subparagraph (a)(2), Father must first demonstrate that Summer did not have a "home state" within the meaning of this provision.[2] *Stevens v. Stevens,* 682 N.E.2d 1309. At the time of the commencement of this proceeding, *i.e.,* the filing of the petition for dissolution, Summer had been living with Father for slightly more than three months. If that period is designated a "period of temporary absence" within the meaning of IC § 31–17–3–2(5), then it is regarded as time spent in the state from which she was absent, *i.e.,* North Carolina. *Moore v. Miller,* 675 N.E.2d 755 (Ind.Ct.App.1997). If that is the case, then North Carolina was Summer's home state and subparagraph (a)(2) is inapplicable. If, on the other hand, the child's presence in Indiana was not a "temporary absence" within the meaning of the statute, then Summer had no home state at the time and subparagraph (a)(2) applies.

The UCCJL specifically provides that "[p]eriods of temporary absence ... are counted as part of the six (6) month or other period." IC § 31–17–3–2(5). Prior decisions of this court have clarified that, pursuant to IC § 31–17–3–2(5), when a child is visiting a parent in a state other than the custodial parent's home state, the time so spent is a "temporary absence" and is to be regarded the same as if the child had never left the custodial parent's state of residence. *See Moore v. Miller,* 675 N.E.2d 755.

In the instant case, Mother asked Father to take Summer to live with him until Mother could get her life back together. She indicated that Father would have Summer for a month at least and 1 1/2 months at most. After approximately 1 to 1 1/2 months had passed, Mother called and advised Father that she was ready to resume custody of Summer but was unable to drive to Indiana to get her. She asked Father to transport Summer to North Carolina, but Father declined. In the weeks that followed, Mother and Father regularly spoke by telephone. She continued, without success, to seek a way to get Summer, including meeting Father half-way. After approximately forty-five days of futile attempts to arrange a pick up by automobile, Mother bought airline tickets for that purpose. Before the date she was to fly to Indiana, Father filed the Indiana dissolution action.

---

**2.** " '[H]ome state' means the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period[.]" IC § 31–17–3–2(5).

Although Mother did not specify a date certain for resuming physical custody of Summer, both parties understood that Summer's stay with Father in Indiana was to be brief, lasting approximately 1 to 1 1/2 months. At the end of the prescribed time, Mother expressed her desire to reassume custody, but was frustrated in her attempts to do so over a period of approximately six weeks by practical, logistical difficulties. When she finally managed to purchase airline tickets to fly to Indiana and pick up Summer, Father filed for divorce and obtained a restraining order forbidding Mother from removing Summer from Indiana. Had Mother been able to make arrangements to drive to Indiana and pick up Summer when she was ready and willing to reassume physical custody, Summer's stay with her father would have been what the parties originally agreed upon when Father took her, *i.e.,* a temporary, six-week visit. Moreover, Father filed the dissolution action at a time such that it effectively blocked Mother's plan to regain physical custody of Summer, which occurred barely more than three months after the child had left North Carolina. Under these facts, we conclude that Summer's stay in Indiana was a "temporary absence" within the meaning of the relevant provisions of the UCCJL.

Because the time in Indiana was a temporary absence within the meaning of the UCCJL, that three-month period is regarded as time spent in North Carolina for the purpose of determining home state jurisdiction. IC § 31–17–3–2(5). Accordingly, North Carolina was Summer's home state within the meaning of the UCCJL and North Carolina had home state jurisdiction over the matter of which parent would be awarded custody of Summer. Because there was a state other than Indiana with home state jurisdiction, the significant connection test was inapplicable and jurisdiction could not be established under subparagraph (a)(2). *Moore v. Miller,* 675 N.E.2d 755.

In order to establish jurisdiction under IC § 31–17–3–3(a)(3), Father was required to establish that Summer had been abandoned. Father did not allege abandonment, nor would the evidence support such an asser-tion. At the time the dissolution petition was filed, Summer was visiting with him. Accordingly, the Howard Superior Court did not acquire jurisdiction pursuant to subparagraph (a)(3).

To establish jurisdiction under IC § 31–17–3–3(a)(4), Father was required to establish that no other state would have jurisdiction under subparagraphs (a)(1)-(3), or that a state other than Indiana that is the child's home state declined jurisdiction. We have determined that North Carolina has home state jurisdiction under subparagraph (a)(1) and there is no indication that North Carolina has declined jurisdiction. Therefore, Howard Superior Court does not have jurisdiction under subparagraph (a)(4).

In summary, North Carolina has home state jurisdiction to determine the question of who is to get custody of Summer. For this reason, the Howard Superior Court does not have jurisdiction of the custody question under subparagraphs (a)(1) or (a)(2). Summer was not abandoned and therefore the Howard Superior Court does not have jurisdiction under subparagraph (a)(3). North Carolina has not declined jurisdiction and therefore the Howard Superior Court does not have jurisdiction pursuant to subparagraph (a)(4). We therefore hold that the Howard Superior Court did not have subject matter jurisdiction to make a custody determination with regard to Summer. This cause is remanded to the Howard Superior Court with instructions to vacate that portion of the dissolution decree that purported to address the question of Summer's custody, for want of subject matter jurisdiction.

Judgment reversed and remanded with instructions.

STATON and BAILEY, JJ., concur.