Orlando QUEZARE, on Behalf of Himself and All Others Similarly Situated, Appellant–Plaintiff,

v.

BYRIDER FINANCE, INC., Appellee–Defendant.

No. 29A02–1008–PL–944.

Court of Appeals of Indiana.

Jan. 14, 2011.

Ronald E. Weldy, Weldy & Associates, Indianapolis, IN, Attorney for Appellant.

Gregory W. Guevara, Emily L. Yates, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Orlando Quezare [1] was employed by Byrider Finance, Inc. In addition to his hourly wage and overtime compensation, Quezare received bonuses pursuant to Byrider's bonus program. Following Quezare's termination, he filed suit against Byrider, alleging that the bonus payments were "wages" for purposes of the Wage Payment Statute and that Byrider violated the Statute by failing to pay him his bonuses within ten days of the date they were earned. The trial court found that the bonus payments were not wages and granted Byrider's summary judgment motion. Quezare appeals. Finding that the bonuses were not wages for purposes of the Wage Payment Statute because they were not directly related to the amount of time Quezare worked and were not necessarily paid regularly, and because the bonus program was discretionary, we affirm the trial court.

---

1. Although Quezare brought this action as a proposed class action, he has never sought certification of a class pursuant to Indiana Trial Rule 23.

## Facts and Procedural History

The facts most favorable to Quezare as the nonmoving party follow. Byrider employed Quezare as a collections account representative from February 28 to October 29, 2007. Quezare managed 290 accounts, each consisting of a loan on a vehicle sold by Byrider's sister corporation, J.D. Byrider. Quezare's primary responsibility was to prevent the accounts from becoming delinquent. Each day, Quezare generated an accounts receivable report and contacted delinquent customers. He was authorized to devise and implement payment plans to help clients remain current on their accounts. Byrider organized its account representatives into teams, and Quezare was on a team with four other account representatives. Sometimes, Quezare assisted his teammates in making phone calls, coached his teammates on what to say to clients, generated documents for his teammates to assess progress toward their collection goals, and provided motivation. Appellant's App. at 77. Quezare was paid an hourly wage and overtime compensation.

When Byrider hired Quezare, he signed a pay plan that set forth the criteria for earning the following bonuses: (1) $50 per week if, as of Saturday of each week, less than 12% of his accounts were not more than one day delinquent; (2) $25 per week if, as of Saturday of each week, less than 12% of his team's accounts were not more than one day delinquent; (3) $50 per week if, as of Saturday of each week, less than 5% of his accounts were not more than ten days delinquent; (4) $25 per week if, as of Saturday of each week, less than 5% of his team's accounts were not more than ten days delinquent; and (5) a "charge off" bonus based upon the percentage of delinquent accounts that he was able to prevent from being written off over the last six months. *Id.* at 21–22. On October 1, 2007, Quezare signed a new pay plan that included the same bonus plan as before except that the charge off bonus calculation was based on the charge offs from the previous quarter rather than over the previous six months and a charge off bonus was available based on team results as well as individual results. Both pay plans provided the following relevant conditions:

1. This pay plan becomes void upon your termination or resignation from the company. In the event your employment is terminated or you resign during the month, any bonus pay for the month will be forfeited.

2. J.D. Byrider reserves the right to alter, adjust, or terminate this plan at any time, without notice.

. . . .

4. This document is not an employment agreement. Any previous pay plan or employee agreement that has been set forth by the company, prior to this date, is hereby terminated.

*Id.* at 88, 89.

Other than the charge off bonus, bonuses were paid on a monthly basis. Many of the bonuses were not paid to Quezare within ten business days of the end of the month for which the bonus was earned. On October 29, 2007, Byrider terminated Quezare's employment. Quezare did not receive any bonus payment for October 2007, his last month of employment.

On December 12, 2007, Quezare filed a complaint against Byrider for a proposed class action lawsuit, alleging that (1) Byrider failed to timely pay monthly performance bonuses to its employees in violation of the Wage Payment Statute, and (2) wrongfully determined that he forfeited his earned bonus following his involuntary separation from employment in violation of

the Wage Claims Act. *Id.* at 92.[2] On September 18, 2009, Byrider filed a motion for summary judgment, arguing that the bonus payments do not constitute wages under the Wage Payment Statute as a matter of law, and that Quezare was not entitled to his October bonus because he was terminated before the end of the month. Quezare filed an opposition to Byrider's motion. Following a hearing, the trial court issued an order on May 6, 2010, granting judgment in favor of Byrider. On June 4, 2010, Quezare filed a motion to correct error, which the trial court denied. This appeal ensued.

### Discussion and Decision

 Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). Our standard of review is well settled:

> In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. The party appealing the grant of summary judgment has the burden of persuading this court

that the trial court's ruling was improper.

*Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 687 (Ind.Ct.App.2006) (citations omitted). Specific findings of fact and conclusions of law are neither required nor prohibited in the summary judgment context. *City of Gary v. Ind. Bell Tel. Co.*, 732 N.E.2d 149, 153 (Ind.2000). Such findings aid our review of a summary judgment, but they are not binding on this Court. *Id.* "In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials." *Kozlowski v. Lake County Plan Comm'n*, 927 N.E.2d 404, 408 (Ind.Ct.App.2010).

 Quezare asserts that by failing to pay his bonuses within ten days of the end of each month, Byrider violated the Ten–Day Rule of the Wage Payment Statute, which provides, "Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment." Ind.Code § 22–2–5–1(b).[3] Here, the parties' dispute centers on whether Byrider's bonus payments constitute "wages." For purposes of the Wage Payment Statute, wages are defined as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." Ind.Code § 22–2–9–1(b); *see Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind.2004) (cit-

---

**2.** In his appellant's appendix, Quezare fails to put the pleadings in chronological order as required by Indiana Appellate Rule 50(A)(2)(f).

**3.** Failure to comply with the Ten–Day Rule subjects an employer to liability under Indiana Code Section 22–2–5–2, which provides:

> Every such person, firm, corporation, limited liability company, or association

who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due[.]

ing Wage Claims Act's definition of wages in addressing whether bonus was wage for purposes of Wage Payment Statute). In determining whether a method of compensation constitutes wages for purposes of the Wage Payment Statute, the name given to the method of compensation is not controlling; instead, we consider the substance of the compensation to determine whether it is a wage. *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind.Ct.App.2005) (citing *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind.Ct.App.1992)). This Court has explained that wages are "something akin to the wages paid on a regular periodic basis for regular work done by the employee[.]" *Id.* (citing *Wank v. St. Francis Coll.*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000), *trans. denied* (2001)). A bonus is a wage under the Wage Payment Statute if the bonus "directly relates to the time that an employee works, is paid with regularity, and is not dictated by the employer's financial success." *Tobin v. Ruman*, 819 N.E.2d 78, 88 (Ind.Ct.App.2004), *trans. denied.*

With respect to the two bonuses based on the percentage of *team* accounts that were delinquent, a prior case is directly on point. This Court has held that a sales bonus was not a wage where it was dependent on the efforts of a district's sales team. *McCausland v. Walter USA, Inc.*, 918 N.E.2d 420, 426 (Ind.Ct.App. 2009), *trans. denied* (2010).[4] Likewise here, the bonuses based on the team accounts were dependent on the efforts of the team. Therefore, those bonuses do not constitute wages for purposes of the Wage Payment Statute.

We now turn to the bonuses based on the delinquency percentage of Quezare's individual accounts. In *Gurnik*, another panel of this Court examined whether a "bonus" constituted a wage. In that case, an employment agreement between Dickinson and The Travel Trade provided for an annual salary of $30,000, payable in weekly installments, and a minimum annual bonus of $5200, or a percentage of the net profits for the year. The amount of the bonus was to be prorated if Dickinson was not employed at the end of the year, and the minimum bonus was not conditioned on whether the company was profitable. The *Gurnik* court concluded that the bonus was a wage, reasoning that the minimum bonus of $5200 was part of Dickinson's regular compensation because it was directly related to the amount of time Dickinson worked (as it was prorated if she was not employed by Travel Trade for the entire year) and it was paid on a regular, periodic basis. 587 N.E.2d at 709. In addition, the minimum bonus was not linked to the success of the company. *Id.*

The bonuses in this case are different from those in *Gurnik*. The minimum bonus that was considered a wage in *Gurnik* was a predetermined amount based on the length of employment. Here, even though the bonuses are calculated on a weekly basis, they are not earned merely by working for a week. Rather, the bonuses are awarded only if the account delinquency goals are met. Thus, they are not necessarily paid on a regular basis. If the delinquency rate of an employee's accounts is greater than the bonus percentage month after month, that employee will not earn any bonuses. Indiana courts have consistently stated that a bonus is a wage under the Wage Payment Statute if the bonus directly relates to the time that an employee works, is paid with regularity, and is not dictated by the employer's financial success. *Tobin*, 819 N.E.2d at 88; *Pyle v. Nat'l Wine & Spirits*, 637 N.E.2d 1298, 1299–1300 (Ind.Ct.App.1994).

---

4. Quezare asks us to revisit our decision in *McCausland,* but we decline to do so.

In addition, we note that Byrider's bonus plan is purely discretionary. Both pay plans provided that Byrider had the right to alter, adjust, or terminate the plan at any time, without notice. The discretionary nature of the plan also leads us to conclude that the bonus payments are not wages for purposes of the Wage Payment Statute. *See Pyle,* 637 N.E.2d at 1301 (Ind.Ct.App.1994) (concluding that bonus system was discretionary and therefore bonuses were not wages); *Wank,* 740 N.E.2d at 913 (concluding that severance pay was not wage because it was a "discretionary, gratuitous benefit").[5]

Affirmed.

KIRSCH, J., and BRADFORD, J., concur.

---

**5.** Quezare also argues that Byrider violated the Wage Claims Act by failing to pay him earned bonuses for the month of October. Because we determine that the bonuses do not constitute wages, we need not address this argument.