# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**MICHAEL C. PEEK**
Christopher & Taylor
Indianapolis, Indiana

**LARRY E. COBEN**
Coben & Associates
Scottsdale, Arizona

ATTORNEYS FOR APPELLEES:

**THOMAS B. BAYS**
**SCOTT A. HARKNESS**
**CYNTHIA E. LASHER**
Norris Choplin Schroeder LLP
Indianapolis, Indiana



FILED

Mar 01 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEREMY K. WARRINER, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1106-CT-489 |
| | ) | |
| DC MARSHALL JEEP a/k/a | ) | |
| DC MARSHALL, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Special Judge
Cause No. 49D02-0706-CT-23488

**March 1, 2012**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

In May 2009, Chrysler LLC, an American automobile icon with a worldwide annual production of approximately 2 million vehicles, filed for Chapter 11 bankruptcy protection. Chrysler then emerged from bankruptcy as a new corporation. As a result, Jeremy Warriner acknowledges that his product liability claim filed in 2005 against Chrysler was discharged. Warriner had both his legs amputated following an accident that caused his Jeep Wrangler made by Chrysler to roll and catch fire. Unable to continue his suit against the manufacturer, Warriner sued the dealership that leased him the car in strict liability as a statutory manufacturer under Indiana Code section 34-24-2-4 that allows a plaintiff to sue the principal distributor or seller of a product if the trial court "is unable to hold jurisdiction" over a particular manufacturer of a product alleged to be defective. Today, we are asked to decide whether a manufacturer's discharge in bankruptcy prevents a trial court from holding jurisdiction over that manufacturer. We conclude it does not.

Appellant-plaintiff Jeremy K. Warriner appeals the trial court's grant of summary judgment in favor of appellee-defendant DC Marshall, Inc. (the Dealership) on Warriner's complaint alleging that the Dealership is strictly liable for injuries that he sustained in an automobile accident under the Indiana Products Liability Act[1] (IPLA) and liable for negligent marketing of an unsafe product. Warriner raises several issues on appeal, two of which we find dispositive. Regarding Warriner's first claim, he argues that because Chrysler LLC's bankruptcy prevented the trial court from holding

---

[1] Ind. Code § 34-20-1-1 to 9-1.

jurisdiction over the manufacturer, he may, in accordance with the IPLA, hold the Dealership strictly liable. Warriner also argues that genuine issues of material fact exist as to whether the Dealership was negligent in its marketing practices. Concluding that summary judgment was properly entered for the Dealership, we affirm.

## FACTS

On October 22, 2005, Warriner, a resident of Indianapolis, was injured in an accident while driving his 2005 Jeep Wrangler (the Wrangler) on S.R. 240 near Greencastle when another vehicle collided with the side of his vehicle. The Wrangler rolled, trapping Warriner inside, before it caught fire. Warriner was severely burned, resulting in the amputation of both his legs.

Warriner leased the Wrangler from Daimler Chrysler Financial Services through the Dealership. The Dealership conducted business on US Hwy 41 in Sullivan and was an authorized dealer of Jeep brand products until June 30, 2005. The president and sole shareholder was Donald C. Marshall, who is married to Warriner's cousin.

On June 7, 2007, Warriner filed a complaint in Marion County against the Dealership, Chrysler LLC[2] ("Old Chrysler"), and several unnamed defendants. Count I of the complaint alleged that Old Chrysler was strictly liable under the IPLA for Warriner's injuries due to a design defect of the Wrangler. Count II asserted that the

---

[2] In Warriner's original and first amended complaint, he incorrectly sued DaimlerChrysler Corporation. Prior to Warriner filing his complaint, DaimlerChrysler Corporation converted under Delaware law to a limited liability company and was renamed DaimlerChrysler Company LLC. After the complaint was filed, DaimlerChrysler Company LLC changed its name to Chrysler LLC and, subsequently, Old Carco LLC. For sake of simplicity, we will refer to the defendant named in Warriner's complaint as Chrysler LLC.

Dealership contributed to Warriner's injuries by negligently marketing the Wrangler to the general public as a safe automobile.

On April 30, 2009, Old Chrysler and certain of its domestic and indirect subsidiaries filed for protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). In re Chrysler, 405 B.R. 84, 87-88 (U.S. Bnkr. Ct. S.D.N.Y. 2009). On May 4, 2009, Old Chrysler filed a notice of suggestion of bankruptcy with the trial court, and the trial court, in accordance with Section 362 of the Bankruptcy Code, stayed all proceedings. Appellant's App. p. 6, 68-69.

On May 31, 2009, the Bankruptcy Court entered an order approving the sale of substantially all of Old Chrysler's operating assets to Chrysler Group, LLC ("New Chrysler"). The sale agreement provided that Old Chrysler transfer its assets to New Chrysler free and clear of all liens, claims, interests and encumbrances.

On August 17, 2009, the trial court granted Warriner's motion to amend his complaint, his first amended complaint, and add Chrysler Group, LLC ("New Chrylser") as a defendant on the theory of successor liability. After New Chrysler removed the case to federal district court, on December 18, 2010, Warriner filed a motion to dismiss New Chrysler because of the terms of the sale agreement and have the case against the remaining defendants remanded to state court. On January 14, 2010, the district court granted the motion. On March 4, 2010, the Dealership filed its first motion for summary judgment on the first amended complaint.

4

On March 19, 2010, Warriner filed his brief in opposition to the Dealership's motion for summary judgment. That same day, Warriner also filed a motion to amend his complaint, his second amended motion, to remove Old Chrysler as defendant and, instead, alleged in Count I that the Dealership is now strictly liable under the IPLA for Warriner's injuries because, as a result of Old Chrysler's bankruptcy, the trial court is unable to hold jurisdiction over Old Chrylser. On March 26, 2010, the trial court granted the motion to amend. The trial court later reaffirmed its order granting the second motion to amend and, in the same order, summarily denied the Dealership's motion for summary judgment on the first amended complaint.

On April 23, 2010, the Bankruptcy Court entered an order confirming the Second Amended Bankruptcy Plan for Old Chrysler's Chapter 11 bankruptcy, effective April 30, 2010. The plan provides that, as of the effective date, Old Chrysler ceases to exist as a corporation and that all persons who have been, are, or may be holders of claims against Old Chrysler shall be enjoined from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against" Old Chrysler. Appellant's App. p. 1055-56.

On October 9, 2010, the Dealership filed a motion for summary judgment on both counts of the second amended complaint, claiming that it was entitled to summary judgment as a matter of law because the material facts show that Warriner cannot proceed with his strict liability claim against the Dealership, and the Dealership did not engage in any marketing or representation to Warriner concerning the handling performance,

5

collision protection safety or safety design of the Wrangler. Warriner filed his brief in opposition arguing that the Dealership was not entitled to summary judgment on either count because Old Chrysler's bankruptcy permits him to proceed against the Dealership in strict liability on count I. On count II, Warriner argued that the trial court had already rejected the Dealership's arguments when it denied the Dealership's first motion for summary judgment. Following a hearing on the motion for summary judgment, the trial court entered an order granting the Dealership's motion for summary judgment on the second amended complaint on April 6, 2011. Warriner filed a motion to correct error that the trial court subsequently denied. Warriner now appeals.

## DECISION AND DISCUSSION

### I. Standard of Review

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. Quezare v. Byrider Finance, Inc., 941 N.E.2d 510, 512 (Ind. Ct. App. 2011). Summary judgment is appropriate only when the moving party demonstrates there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). We will construe the designated evidence in the light most favorable to the non-moving party. Id. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. Id. We will affirm summary judgment if it is

6

sustainable on any theory or basis found in the evidentiary material designated to the trial court. Inlow v. Inlow, 797 N.E.2d 810, 818 (Ind. Ct. App. 2003).

## II. IPLA Claim

Warriner argues that the trial court erred when it granted summary judgment in favor of the Dealership on Count I. Specifically, although the Dealership is not the manufacturer of the Wrangler, Warriner claims that, under Indiana Code section 34-20-2-4, the Dealership may be considered the manufacturer of the Wrangler because the trial court is unable to hold jurisdiction over Old Chrysler as a result of its bankruptcy, and the Dealership was a principal seller or distributor of Old Chrysler products. Accordingly, Warriner argues that he may now hold the Dealership as the statutory manufacturer and strictly liable for his injuries.

When interpreting statutes, we examine and interpret a statute as a whole, giving words their common and ordinary meaning, and do not overemphasize a strict, literal, or selective reading of individual words. Schrenger v. Caesars Ind., 825 N.E.2d 879, 881 (Ind. Ct. App. 2005). We take words and phrases in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. Id. Every word must be given effect and meaning where possible, and no part is to be held meaningless if it can be reconciled with the rest of the statute. Id.

The IPLA imposes liability upon sellers of a product in a defective condition that is unreasonably dangerous to any user or consumer. Morgen v. Ford Motor Co., 797 N.E.2d 1146, 1148 (Ind. 2003). The IPLA "governs all actions that are: (1) brought by a

7

user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by a product . . . regardless of the substantive legal theory or theories upon which the action is brought." Ind. Code § 34-20-1-1. The IPLA restricts actions for strict liability in tort to manufacturers of defective products. I.C. § 34-20-2-3. But, the IPLA provides an exception by virtue of a provision that imposes liability through treating certain parties as though they are manufacturers:

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or a part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this chapter, the manufacturer of the product.

I.C. § 34-20-2-4. In other words, Warriner may sue the Dealership in strict liability if two conditions are met: (1) the Dealership must be a principal distributor or seller over whom the court can hold jurisdiction; and (2) the court must be unable to hold jurisdiction over Old Chrysler, the actual manufacturer. Kennedy v. Guess, Inc., 806 N.E.2d 776, 781 (Ind. 2004). If either condition is absent, then Warriner's claim must fail as a matter of law.

Finding it dispositive of his claim, we begin with Warriner's argument that the trial court does not hold jurisdiction over Old Chrysler because the Bankruptcy Plan discharged his personal injury claim. Specifically, Warriner directs us to the language of the Bankruptcy Plan that provides that all persons who have been, are, or may be holders of claims against Old Chrysler shall be enjoined from "commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of

8

any kind against" Old Chrysler. Appellant's App. p. 1055-56. Taking Warriner's assertion as true that the language in the Bankruptcy Plan discharged his claim, we consider the effect of a discharge under Federal Bankruptcy laws on the trial court's jurisdiction.

Under the United States Constitution, the federal government enjoys the exclusive power to promulgate bankruptcy laws. U.S. Const., art. I, § 8. Federal law governing bankruptcy preempts state law. Hammes v. Brumley, 659 N.E.2d 1021, 1027 (Ind. 1995). Indiana courts have recognized the supremacy of the federal courts in matters related to bankruptcy proceedings. Id.

According to section 524(a)(2) of the Bankruptcy Code, a discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. In other words, a discharge injunction enjoins a creditor or claimant from initiating or continuing a cause of action, but does not divest state courts of jurisdiction over an enjoined action. Indeed, if discharge deprived a state court of jurisdiction, then there would be no need for the permanent injunction that accompanies the discharge. Furthermore, a debtor confronted by a creditor seeking to collect on a debt discharged in bankruptcy may assert discharge as an affirmative defense in state court. In re Kewanee Boiler Corp., 270 B.R. 912, 918 (Bankr. N.D. Ill. 2002).

Accordingly, we find that, contrary to Warriner's arguments, the trial court still holds jurisdiction for the purposes of the IPLA. Therefore, Warriner may not rely on

9

Indiana Code section 34-20-2-4 to assert a claim in strict liability against the Dealership, and we affirm the judgment of the trial court with respect to the IPLA claim.

### III. "Negligent Marketing"

Warriner next contends the trial court erred in granting the dealership's motion for summary judgment in regard to the negligent marketing claim. Specifically, Warriner argues that there is a genuine issue of material fact as to whether the Dealership participated in the marketing of the Wrangler that precludes summary judgment.[3]

Warriner's complaint alleged that the Dealership is:

negligent in the following respects:

    a.    marketing and representing to the consuming public a level of safety in handling performance and collision protection that was not accurate;

    b.    marketing and representing to the consuming public that the Jeep was reasonably safe; and,

    c.    providing the consuming public with information which inaccurately described the safety design of the Jeep Wrangler.

Appellant's App. p. 492. As a result, Warriner claims that he purchased the Wrangler, he was harmed by an alleged design defect, and the Dealership is thereby responsible for his injuries because it inaccurately represented to the public that the vehicle was safe.

Warriner does not direct us to any Indiana cases recognizing a claim of negligent marketing. However, to recover on a theory of negligence, a plaintiff must establish three elements: (1) the defendant's duty to conform his conduct to a standard of care

---

[3] Additionally, Warriner argues that, if successful in arguing his first claim that the Dealership may be held strictly liable to due to bankruptcy of Old Chrysler, the Dealership also stands in the shoes of Old Chrysler on his claim for negligent marketing. Having concluded that the Warriner's first claim fails, so does this argument.

10

arising from his relationship with the plaintiff, (2) a breach of the defendant's duty to conform his conduct to that standard of care, and (3) an injury to the plaintiff proximately caused by the breach. Morehead v. Deitrich, 932 N.E.2d 1272, 1277 (Ind. Ct. App. 2010).

Here, Warriner asserts that there is a genuine issue of material fact as to whether the Dealership participated with Old Chrysler in the marketing of the Wrangler. In his brief in opposition to the second motion for summary judgment, Warriner refers back to the arguments made in his brief in opposition to the first motion for summary judgment. More specifically, Warriner argued that the "[c]omplaint alleges that the Wrangler was defective in design and was marketed with representations regarding its safety design." Appellant's App. p. 495. And, in support of his argument on appeal, Warriner highlights the following designated evidence: (1) the Dealership had a highway billboard showing the Jeep logo, appellant's app. p 875, (2) the Dealership received marketing pamphlets from Old Chrysler to market Jeeps, appellant's app. p. 908-09, and (3) Warriner received marketing materials and saw advertisements by Old Chrysler which indirectly benefited the Dealership. Appellant's App. p. 906-09, 916; Appellant's Br. p. 16.

We fail to see how this evidence creates a genuine issue of material fact as to whether the Dealership participated in the marketing of Old Chrysler, particularly in regard to any representations regarding safety made by the Dealership. Thus, we affirm the trial court's grant of summary judgment in favor of the Dealership.

The judgment of the trial court is affirmed.

DARDEN, J., concurs.

BAILEY, J.,  concurs in part and concurs in result in part.

# IN THE
# COURT OF APPEALS OF INDIANA

JEREMY K. WARRINER,           )
                              )
    Appellant-Plaintiff,      )
                              )
        vs.           )     No. 49A02-1106-CT-489
                              )
DC MARSHALL JEEP a/k/a        )
DC MARSHALL, INC.,            )
                              )
    Appellee-Defendant.       )

**BAILEY, Judge, concurring in part and concurring in result in part**

The majority affirms the trial court's grant of D C Marshall Jeep's ("Marshall") motion for summary judgment. I concur as to the negligent marketing claim. But I concur in result on Warriner's strict products liability claim and write separately because I would affirm the trial court on different grounds. I would affirm the trial court because Warriner voluntarily dismissed Old Chrysler from the case before the effective date of the liquidation of Old Chrysler by the bankruptcy court. Thus, he cannot seek recovery from Marshall on his products liability claim. Further, while I disagree with the

13

majority's interpretation of the Indiana Products Liability Act ("IPLA"), I also do not think we need to reach that issue to decide this case, and would not do so.

On March 19, 2010, Warriner filed his motion to amend the complaint and his amended complaint. In his motion, Warriner stated:

1. Chrysler, LLC and D.C. Marshall by virtue of its Memorandum Relating to Bankruptcy Proceedings of Chrysler and its response to Plaintiff's Complaint has stated that Chrysler, LLC n/k/a Old CarCo, LLC, is Daimler Chrysler Corporation, the entity named in Plaintiff's Complaint.

2. Pursuant to Indiana Code 34-20-2-4 if a Court is unable to hold jurisdiction over a manufacturer of a product, then that manufacturer's seller shall be considered the manufacturer. See also Kennedy v. Guess, 806 N.E.2d 776 (Ind. 2004).

***

5. In this case justice requires amendment of the pleading. Since Daimler Chrysler Corporation has filed bankruptcy the Plaintiff in the interest of justice is entitled to amend his Complaint.

(Appellant's App. 485-486.) Warriner's amended complaint named only Marshall as a defendant. On March 26, 2010, the trial court granted Warriner's motion and amended his complaint. (Appellant's App. 515.) The trial court's CCS reflects dismissal of all defendants but Marshall from the case. On April 23, 2010—nearly a month after the trial court granted Warriner's motion—the United States Bankruptcy Court for the Southern District of New York approved Old Chrysler's liquidation plan and gave it an effective date of April 30, 2010.

Warriner dismissed Old Chrysler from the case before the bankruptcy court's approval of Old Chrysler's liquidation plan and the plan's effective date. That is,

14

Warriner dismissed Old Chrysler as a party after the trial court exercised jurisdiction over the business but before the final liquidation order. The trial court relinquished jurisdiction over Old Chrysler on Warriner's motion, and he cannot now claim the trial court could not "hold" jurisdiction and thus deprived him of an opportunity to hold the seller liable under the section 34-20-2-4 of the IPLA.

For this reason, I do not think we need to reach the question of whether the trial court's entry of summary judgment was erroneous under the IPLA. Nevertheless, I disagree with the majority's interpretation of the Act, and therefore address the issue here.

The majority affirms the trial court's entry of summary judgment based upon a resolution of an issue of apparent first impression: whether the phrase "unable to hold jurisdiction," I.C. § 34-20-2-4, works to preclude Warriner from pursuing his strict products liability claim against Marshall as a principal distributor or seller of a vehicle that a now-bankrupt business manufactured. On the majority's reading of the statute, this scenario would preclude an injured plaintiff from seeking any remedy under the IPLA's strict products liability provisions, because our courts could maintain control—"hold jurisdiction"—over the dispute just long enough to dismiss the manufacturer and preclude any other remedy. I cannot agree that, in giving full effect to the IPLA, this is what the legislature intended when it allowed an injured party to pursue a remedy against a principal distributor or seller where the court is "unable to hold jurisdiction" over the manufacturer.

15

Indiana Code section 34-20-2-4 provides:

> If a court is unable to hold jurisdiction over a particular manufacturer of a product or part of a product alleged to be defective, then that manufacturer's principal distributor or seller over whom a court may hold jurisdiction shall be considered, for the purposes of this chapter, the manufacturer of the product.

This provision protects sellers and distributors from strict products liability except where the court "is unable to hold jurisdiction" over the manufacturer. Our supreme court referred to this provision as the "'domestic distributor' exception" to the IPLA. Kennedy v. Guess, Inc., 806 N.E.2d 776, 781 (Ind. 2004). To be held liable under the domestic distributor exception, the alleged distributor or seller must 1) be the "principal distributor or seller over whom the court can hold jurisdiction; and 2) the court must be unable to hold jurisdiction" over the manufacturer. Id.

The IPLA leaves undefined the phrase "hold jurisdiction." This phrase troubled the federal Seventh Circuit Court of Appeals, which reversed a district court's entry of summary judgment that relied on the phrase but where the parties provided little argument to aid the court in its interpretation of the statute. Williams v. REP Corp., 302 F.3d 660, 664-65 (7th Cir. 2002) (citing I.C. § 33-1-1.5-3(d), the predecessor statute to I.C. § 34-20-2-4).

Here, the parties place this provision directly into play and provide argument on its meaning. The majority concludes that a court "hold[s] jurisdiction" where, as here, a federal bankruptcy court has discharged claims against a defendant manufacturer. The

16

majority provides two rationales. First, the permanent injunction against pursuing a discharged claim would not be necessary if the effect of a discharge in bankruptcy were to divest state courts of jurisdiction over the claim. Second, the discharge of a claim in bankruptcy may serve as an affirmative defense in other courts. This, the majority concludes, shows that a non-bankruptcy court can "hold jurisdiction" over the enjoined action.

I do not think this result conforms to our standard for statutory interpretation.

> A question of statutory interpretation is a matter of law. In such interpretation, the express language of the statute and the rules of statutory interpretation apply. We will examine the statute as a whole, and avoid excessive reliance on a strict literal meaning or the selective reading of words. Where the language of the statute is clear and unambiguous, there is nothing to construe. However, where the language is susceptible to more than one reasonable interpretation, the statute must be construed to give effect to the legislature's intent. The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. Thus, we must keep in mind the objective and purpose of the law as well as the effect and repercussions of such a construction.

In re J.J., 912 N.E.2d 909, 910 (Ind. Ct. App. 2009). Where non-technical terms are used in a statute and go undefined, we give definition to those terms through "'their ordinary and accepted dictionary meaning.'" Bd. of Dirs. of Bass Lake Conservancy Dist. v. Brewer, 839 N.E.2d 699, 702 (Ind. 2005) (quoting Johnson County Farm Bur. Coop. Ass'n v. Ind. Dep't of State Rev., 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991), trans.

17

denied). Where a word is used differently from its common dictionary definition, however, we disregard the common definition. Id.

Here, the statute's use of the phrase "hold jurisdiction" goes undefined. The statute uses "hold" in an unusual way. We frequently discuss whether a court "has" jurisdiction, see, e.g., Stewart v. Stewart, 708 N.E.2d 903, 907 (Ind. Ct. App. 1999) (noting that "North Carolina has home state jurisdiction"), or may "obtain" jurisdiction, see, e.g., Horlander v. Horlander, 579 N.E.2d 91, 93 (Ind. Ct. App. 1991) (noting that a court "obtains [personal] jurisdiction" where minimum contacts exist between the state and the party), trans. denied. "Hold" is commonly understood not only to indicate possession but also retention. See Webster's Third New International Dictionary Unabridged 1078 (2002) (including among the most common definitions of "hold," "to retain in one's keeping : maintain possession of : not give up or relinquish," and listing among synonyms not only "possess" or "have" but also "detain" and "reserve").

Applied here, then, I do not think a court "holds" jurisdiction when it exercises jurisdiction only to conclude that it cannot legally act, as in the case of a bankruptcy stay or discharge enjoining the claim. As our supreme court explained:

> Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

> Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

18

K.S. v. State, 849 N.E.2d 538, 540 (Ind. 2006).

Thus, in Packard, our supreme court held that the use of the phrase, "the tax court does not have jurisdiction to hear the appeal," I.C. § 33-26-6-2, referred to this less precise meaning. The phrase meant not personal or subject matter jurisdiction, but instead referred to the imprecise formulation, "jurisdiction over a particular case"—that is, the failure to meet the statutory requirements to perfect an appeal to the Indiana Tax Court. Packard, 852 N.E.2d at 929.

The better reading of section 34-20-2-4—one that I think gives greater effect to the legislature's enactment of the IPLA by providing injured parties with a path toward recovery from distributors or sellers—understands "hold jurisdiction" as the court in Packard understood the statute at issue there. A court cannot hold (in the sense discussed above) jurisdiction in the manner best indicated by the language of the statute not because the court lacks jurisdiction, but because there is a legal impediment to the court's exercise of subject matter and/or personal jurisdiction. Thus, the effect of pursuing a claim that has been discharged in bankruptcy is much the same as an attempt to pursue an appeal that has not been perfected: it is an act that subjects the claimant to the jurisdiction of the bankruptcy court to enforce the injunction and requires Indiana courts to relinquish control over resolution of the claim.

To be sure, being "unable to hold jurisdiction" in the IPLA implicates the true jurisdictional concepts discussed in K.S. and Packard. It also, as the majority notes, incorporates such things as "a 'matter constituting an avoidance, matter of abatement or

19

affirmative defense.'" Packard, 852 N.E.2d at 932 (quoting Ind. Trial Rule 8(C)). But I cannot agree with the majority's approach that those are the only requirements envisioned by the IPLA, because it forecloses remedies where, for example, an injury could only be reasonably discovered after a manufacturer has been discharged of its debts in bankruptcy related to a particular product. Strictly speaking, jurisdiction over the manufacturer might still exist: a claim under the IPLA is within the subject matter jurisdiction of Indiana courts, and service could be obtained to establish personal jurisdiction over the manufacturer. But the bankruptcy discharge would serve as a legal impediment to preclude an Indiana court from "hold[ing] jurisdiction," that is, from resolving the dispute on its merits through the exercise of subject matter and personal jurisdiction over the liability claim and the discharged manufacturer.

This reading of the statute does not preclude a court from determining that a plaintiff failed to meet a prerequisite to maintaining an action under the IPLA against a manufacturer and thus is precluded from pursuing the distributor or seller. Indeed, such is the case here, where Warriner voluntarily dismissed Old Chrysler from the action.

Thus, my reading of the statute does not afford Warriner relief from summary judgment on his strict products liability claim. For while I would conclude that the trial court here could not hold jurisdiction over Old Chrysler, Warriner voluntarily dismissed Old Chrysler from the suit well before the trial court's entry of summary judgment, and indeed before the bankruptcy court's liquidation plan was given full effect. It was thus by Warriner's own actions that the court was left without jurisdiction over Old Chrysler.

20

In light of the foregoing, I concur in part, and concur in result in part.